Emma M. McGrell, as Administratrix of Maggie May McGrell, Deceased, Respondent, *v.* Buffalo Office Building Company, Appellant.

1. Negligence — Passenger Elevator — Duty of Owner. While it is the duty of the owner of a building, operating a passenger elevator therein, to provide a safe and suitable car, appliances and other machinery for the operation of the elevator and for the accommodation of passengers, and to exercise strict diligence in that respect, the law does not impose upon him the duty of providing for the absolute safety of passengers, so that they shall encounter no possible danger or meet with no casualty in the use of the appliances provided.

2. Ordinary and Reasonable Care. As to the surroundings and other structures forming a part of a passenger elevator plant, in respect to which less serious results are to be expected from a defect than in respect to the machinery and appliances for motion and control, the owner is responsible only for the want of ordinary and reasonable care, in cases where danger is not to be apprehended if due and proper care is observed by the passenger.

3. Elevator Shaft Inclosed by Grating — Absence of Proof of Negligence. A passenger elevator shaft in a fire proof office building was inclosed by bars forming a grating, with doors in the shaft and none in the car. A passenger sprung from the rear of the car while in motion, caught hold of the shaft bars, fell between them and the floor of the car, and was fatally injured. In an action against the owner for damages, it was shown that the elevator was inclosed in the manner customary in such buildings; that elevators so inclosed had been in use for years without a similar accident, and that doors in the shaft, instead of in the car, were usual. *Held*, that, in the absence of anything showing that the owner could have anticipated or foreseen any such result from the manner in which the elevator was inclosed, he was not chargeable with negligence by reason thereof.

4. INFANTS.  A girl nine and a half years old is not of such tender years as to be held, as matter of law, *non sui juris;* and the burden of establishing the fact of inability to care for herself as a passenger in an elevator, so as to call for unusual attention or instructions, rests upon the party alleging it.

*McGrell* v. *Buffalo Office Building Co.,* 90 Hun, 30, reversed.

(Argued May 13, 1897; decided June 8, 1897.)

APPEAL from a judgment and order of the General Term of the Supreme Court in the fifth judicial department, entered November 8, 1895, which reversed a judgment in favor of defendant entered upon a nonsuit, and also reversed an order denying the plaintiff's motion for a new trial made upon the minutes of the trial judge.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Porter Norton* for appellant.  There was no evidence showing negligence on defendant's part.  (*Lafflin* v. *B. & S. R. R. Co.,* 106 N. Y. 136; *Loftus* v. *U. F. Co.,* 84 N. Y. 455; *Frobisher* v. *F. A. T. Co.,* 151 N. Y. 431; *Stone* v. *D. D., E. B. & B. R. R. Co.,* 115 N. Y. 104; *Wendell* v. *N. Y. C. & H. R. R. R. Co.,* 91 N. Y. 420; *Mitchell* v. *Marker,* 62 Fed. Rep. 140; *Akersloot* v. *S. A. R. R. Co.,* 131 N. Y. 599; *Black* v. *T. A. R. R. Co.,* 2 App. Div. 387; *Brennan* v. *B. H. R. R. Co.,* 12 Misc. Rep. 570.)

*Wallace Thayer* for respondent.  The owner and operator of an elevator used to carry the public in a public office building is a common carrier, and is required to use the degree of care in conducting the elevator required of a common carrier, that is, to provide the safest apparatus in common use, and to use the same with the utmost care.  (*Mitchell* v. *Marker,* 54 Fed. Rep. 637; 62 Fed. Rep. 139; *Tredwell* v. *Whittier,* 80 Cal. 574; *Goodell* v. *Taylor,* 41 Minn. 207; *Hahn* v. *Hutchinson,* 159 Penn. St. 133; *Stowbridge* v. *Bradford,* 128 Penn. St. 200; *Lee* v. *Knapp,* 55 Mo. App. 390.)  Defendant's duty to deceased, who was only nine years of age, and who had been conducted by defendant's janitor into the elevator, which was a place of danger, was much greater than its duty would

have been to a grown person.   It owed to the child the highest degree of watchfulness and care. (*Sheridan* v. *B. C. & N. R. R. Co.,* 36 N. Y. 39; *O'Mara* v. *H. R. R. R. Co.,* 38 N. Y. 445; *Maher* v. *C. P., N. & E. R. R. R. Co.,* 67 N. Y. 52; *Thurber* v. *H. B., M. & F. R. R. Co.,* 60 N. Y. 326; *Swift* v. *S. I. R. T. R. R. Co.,* 123 N. Y. 645; *Mowrey* v. *C. C. Ry.,* 51 N. Y. 666; *Byrne* v. *N. Y. C. & H. R. R. R. Co.,* 83 N. Y. 620; *Dowling* v. *N. Y. C. & H. R. R. R. Co.,* 90 N. Y. 670.)   When the plaintiff had shown that defendant provided an elevator which lacked the safeguards which our common experience and common prudence would teach a person unskilled in mechanical science to provide, and had further shown that all the elevators in common use had the safeguards which defendant's elevator lacked; and further, that defendant operated its elevator in so unsafe a manner as to habitually throw passengers over; and further, that these acts of negligence caused the child's death, she had made out a case. ( *Wheeler* v. *M. M. Co.,* 135 Mass. 298; *Jarvis* v. *B. E. R. R. Co.,* 16 N. Y. Supp. 96; 133 N. Y. 623; *Wallace* v. *C. V. R. R. Co.,* 138 N. Y. 307; *Hart* v. *H. R. B. Co.,* 84 N. Y. 60; *Collins* v. *N. Y. C. & H. R. R. R. Co.,* 109 N. Y. 243.)   If there were any facts from which the inference of negligence could properly be drawn, it was a question of fact for the jury.   It is only where there are no facts from which such a conclusion could be drawn that the court can nonsuit the plaintiff. (*Hart* v. *H. R. B. Co.,* 80 N. Y. 622.)   The plaintiff was not obliged to prove either negligence or lack of contributory negligence with mathematical precision, but inferences might be drawn by the jury, provided there were facts and circumstances in the case from which they could legitimately be drawn, of negligence on the part of the defendant and lack of contributory negligence on the part of the plaintiff's intestate. (*Johnson* v. *S. G. & L. Co.,* 146 N. Y. 152; *Breen* v. *N. Y. C. & H. R. R. R. Co.,* 109 N. Y. 297; *Jones* v. *N. Y. C. & H. R. R. R. Co.,* 28 Hun, 364; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.,* 58 N. Y. 248.)

Martin, J.   This action was to recover damages occasioned by the death of the plaintiff's intestate upon the theory that it was caused by the negligence of the defendant.   The decedent was killed in one of the passenger elevators operated by the defendant in its ten-story office building in the city of Buffalo.

The negligence charged in the complaint is that the elevator, at the time of the decedent's injury, was so unskillfully operated as to cause a violent jolt which threw her against the bars in the shaft or well of the elevator, the defendant's omission to provide any door to the car or to properly guard the opening through which persons entered it, and that the bars used in the construction of the shaft were insufficient. The answer consisted of a denial and allegations of contributory negligence.

The accident occurred on the twenty-third day of August, 1894.   The decedent came to the defendant's building between nine and ten o'clock in the morning, and upon learning that she desired to see her mother, the superintendent of the building placed her in the elevator with instructions to the person in charge to take her to a room upon the third floor where her mother was at work.   She stood in the back part of the car where she remained until the elevator had ascended about eight feet, when she suddenly sprang forward, caught hold of the bars which formed a part of the shaft above the door, fell with her head between them and the floor of the elevator, and was thereby so seriously injured that she died immediately.   On the trial the plaintiff was nonsuited and a judgment in favor of the defendant was entered thereon.   On appeal to the General Term it was reversed and a new trial granted.

While it was the defendant's duty to provide a safe and suitable car, appliances and other machinery for the operation of its elevator, and for the accommodation of its passengers, and to exercise strict diligence in that respect, still, the law did not impose upon the defendant the duty of providing for their absolute safety, so that they should encounter no possible

danger or meet with no casualty in the use of the appliances provided. (*Dougan* v. *Champlain Transportation Co.*, 56 N. Y. 1; *Crocheron* v. *N. S. S. I. F. Co.*, 56 N. Y. 656; *Cleveland* v. *New Jersey Steamboat Co.*, 68 N. Y. 306; *Loftus* v. *Union Ferry Co.*, 84 N. Y. 455; *Lafflin* v. *Buffalo & S. W. R. R. Co.*, 106 N. Y. 136; *Morris* v. *N. Y. C. & H. R. R. R. Co.*, 106 N. Y. 678; *Frobisher* v. *Fifth Ave. Transportation Co.*, 151 N. Y. 431.) In the *Dougan* case, an omission to inclose the space between the railing and deck of a boat, so as to preclude the possibility of slipping under it, was the negligence charged. It was shown that many of the boats in use were constructed in that way and no accident of a similar kind had happened, and the court held that that fact was proof that there was no reasonable ground to apprehend that any one would fall under the railing, and, therefore, negligence could not be predicated upon the failure to board up the space. The *Crocheron* case was where the plaintiff slipped on the edge of a step as she was passing down the stairway to leave the defendant's boat. The negligence alleged was the placing of a plate on the stairs. It was proved that the stairs upon the best boats were finished in that manner, and that the boat had been in use a year and carried many thousands of passengers and no injury of the kind had occurred before. It was held that there was no evidence of negligence and a nonsuit should have been granted. In the *Cleveland* case a somewhat similar accident occurred, and it was there said: "The defendant is liable for any injury which might reasonably be anticipated to occur, in view of all the circumstances, and of the nature of the carriage, and the number and character of the persons upon the boat. (*Flint* v. *Nor. and N. Y. Trans. Co.*, 34 Conn. 554; *Putnam* v. *Broadway and Seventh Avenue Railroad Co.*, 55 N. Y. 108, 119.) This broad statement has limits. A carrier of passengers is not bound to foresee and provide against casualties never before known and not reasonably to be expected. (*Dougan* v. *Ch. Tr. Co.*, 56 N. Y. 1; see, also, *Wyckoff* v. *Queens County Ferry Co.*, 52 N. Y. 32; *Croche-*

*ron* v. *N. S. S. I. F. Co.*, 56 N. Y. 656.) Hence his duty is not to be estimated by what, after an accident, then first appears to be a proper precaution against a recurrence of it."

*Loftus* v. *Ferry Co.* was a case where a child fell through one of the openings in the guard on the side of a bridge or float adjoining the passageway for the passengers leaving the boat of the defendant, and it was said that the fact that it had been long in use without accident, justified the conclusion that the company had no reason to apprehend such an accident, and, therefore, the plaintiff could not recover. In the *Lafflin* case, where the negligence claimed was that the platform was too far from the steps of the cars, and by reason thereof the plaintiff fell between them and was injured, it was decided that the proof did not justify a recovery by the plaintiff. In that case there was proof that no accident had happened at that station before, although it had been in use for years, and the court said : " It was not bound so to construct this platform as to make accidents to passengers using the same impossible. * * * It was bound simply to exercise ordinary care, in view of the dangers attending its use, to make it reasonably adequate to the purpose to which it was devoted. * * * No structure is ever so made that it may not be made safer. But as a general rule, when an appliance or machine or structure, not obviously dangerous, has been in daily use for years, and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of culpable imprudence or carelessness." In the *Morris* case, where a passenger was injured by the falling of a clothes wringer, which was placed in one of the racks above the seat occupied by him, this court decided that the defendant was not liable, as it was bound only to exercise reasonable care to prevent such an accident. The *Frobisher* case was where the plaintiff was injured in attempting to enter an omnibus. While standing upon the step his foot slipped under the body of the vehicle, he fell, and his injury was the result. The alleged negligence was that the back of the step was open. There was proof that the kind of step used by the defendant

was in general use, and this court held that it was not charge,
able with negligence in the use of such a step, as it did
not appear that any accident of that character had occurred
before. If the principle of these authorities is applicable to
this case, then it is plain that the plaintiff cannot recover
unless such an injury as was sustained by the plaintiff's intes-
tate could have been reasonably anticipated, and, in view of
all the circumstances, might, with reasonable diligence, have
been foreseen and provided against.

It is said that the foregoing authorities have no application
to this case, but that the defendant was bound to exercise the
utmost care and diligence, and was liable for the slightest neg-
lect against which human prudence and foresight might have
guarded. It may be that, as to the machinery and appliances
by which an elevator is moved and controlled in its ascent and
descent, an owner is bound to use the utmost care as to any
defect which would be liable to occasion great danger or loss of
life, and that he is in that respect subject to the same rule that
applies to a railroad company in regard to its roadbed, engine
and other similar machinery. But, as to the surroundings and
other structures forming a part of the elevator plant, where
less danger is to be apprehended, we think the rule is less
strict, and the doctrine of the cases cited applies. In the lat-
ter case the rule is satisfied with that degree of care which a
reasonably prudent man would exercise. This distinction is
considered in some of the cases to which we have already
referred. The requirement of the greater degree of care is
dependent, not so much upon the actual apprehension of
danger as upon the consequences likely to result from a
defect in the machinery and appliances. In cases where less
serious results are to be expected, and in cases where danger
is not to be apprehended, if due and proper care is observed
by the passenger, the owner is responsible only for the want
of ordinary and reasonable care. (*Kelly* v. *Manhattan R.
Co.*, 112 N. Y. 443; *Miller* v. *O. S. S. Co.*, 118 N. Y. 199,
211.) In this case no such serious results were to be expected
from any defect or insufficiency of the bars or grating, and,

besides, with the exercise of due and proper care on the part of a passenger riding in this elevator, no danger of such an accident could have been apprehended and no such injury would have occurred. Hence, the defendant is responsible only for the want of ordinary and reasonable care.

We find no testimony which would justify a finding that the decedent's injury resulted from starting the elevator with a jerk or jolt. The evidence is to the contrary, and shows conclusively that the elevator was so constructed that it was impossible that it could have been thus started. Therefore, that allegation of the complaint was entirely unproved. Moreover, the record shows that the elevator was in the charge of a young man of experience, and in all respects competent. It was of modern construction, properly built and equipped, and in good order in every respect. It was also proved that doors to elevator cars were not ordinarily used, and that but few had either seats or railings in the car. It is contended that the bars, or grates which formed part of the elevator shaft were insufficient in size and not properly fastened. While this accident may have disclosed that fact, yet the undisputed testimony was that in fire-proof buildings of the character of the defendant's, that was the customary manner of inclosing elevator shafts. There was also evidence that it was only in cheaper buildings, or those that were not fire-proof, that brick shafts or wire netting were used, and that the latter would have been no more effective to prevent this accident than the means employed. No proof that any similar accident had ever before occurred was offered, although such elevators had been in use for years. We think there was no evidence which would have warranted the trial court in submitting to the jury the question of the defendant's negligence in thus protecting the opening in the shaft, as there was nothing to show that the defendant could have anticipated or foreseen any such result from using a grating of that kind. Nor do we think the defendant could be held liable for the reason that there was no door to the car of the elevator, as suggested by the learned judge who wrote the opinion in the court below,

for, as we have already seen, the proof was that doors in elevator cars were not in ordinary use, but that doors to the openings were usually in and formed a part of the shaft or well of the elevator as they did in this case.

But the learned General Term also suggested that negligence might be based upon the rapidity with which the car was started without giving to the decedent instructions how to protect herself. That there was no negligence in the manner of starting the elevator, we have already seen. Just what instructions the learned General Term deemed necessary to be given is not stated, and it is somewhat difficult to understand what they should have been. Nor are we aware of any principle which required the defendant to give the decedent any instructions whatever. There was no proof upon the trial that any instructions to passengers, whether infants or adults, were usual or necessary. At the time the decedent was nine and one-half years of age, a bright, healthy, active girl, who assisted her mother at home and sometimes went on errands for her in the city. If it be said that she was *non sui juris*, and, consequently, unusual attentions or instructions should have been given her, the answer is that she was not of such tender years that it could be held, as a matter of law, she was *non sui juris*. But if unable to properly care for herself under the circumstances, the burden of establishing that fact was upon the plaintiff. (*Stone* v. *Dry Dock, etc., R. R. Co.*, 115 N. Y. 104; *Tucker* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 308.) No such proof was given.

After a careful examination of the evidence, we are unable to discover any proof which would have justified the trial court in submitting the question of the defendant's negligence to the jury. Negligence is not to be presumed, but must be proved, and before a plaintiff is entitled to recover he must establish an omission to discharge some duty which the defendant owed him. We find nothing in this case to show that the defendant failed to perform any duty which it owed to the plaintiff's intestate. The elevator, the car, the shaft and all the machinery employed in its operation were of the usual

35

kind, in complete order and properly operated by a servant who was in all respects competent.

Under these circumstances, we think the trial court properly nonsuited the plaintiff, and that the General Term erred in reversing the judgment entered thereon. For that error the judgment appealed from should be reversed, and the judgment entered upon the decision of the Circuit should be affirmed.

The judgment of the General Term should be reversed and that of the Circuit affirmed, with costs.

All concur.

Judgment reversed.