### SAVAGE v. JOSEPH H. BAULAND CO.

(Supreme Court, Appellate Division, Second Department. July 1, 1899.)

NEGLIGENCE—ELEVATORS—DEGREE OF CARE NECESSARY.

    Where an elevator containing a number of passengers becomes caught between the second and third floors of a building, so that it cannot be moved in either direction by the ordinary appliances, and is in no danger of falling so long as it is left in that condition, there is no such emergency as would relieve the owner from the duty of exercising the "highest degree of care and skill."

Appeal from trial term.

Action by Clara B. Savage against the Joseph H. Bauland Company. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Jesse Johnson (John L. Wilkie and William Burton Goodwin, on the brief), for appellant.

Edward M. Bassett, for respondent.

WOODWARD, J. The plaintiff in this action, an unmarried woman 24 years of age, sustained certain injuries while riding in an elevator of the defendant, in the borough of Brooklyn. The elevator was of standard make, and was fully equipped with all of the latest safety appliances. It was regularly inspected, both by an agent of the company which insured the safety of passengers and by the engineer employed by the defendant. There is no claim of negligence upon any of these grounds; but on the day of the accident a piece of bunting, probably from the material which had been used in decorating the elevator shaft for a special occasion, became entangled with the apparatus which controls the movements of the elevator in such manner that, when the car had reached an altitude between the second and third floors above the basement, it was brought to a sudden standstill, and all efforts, by the use of the levers, failed to start the car in either direction. The president of the defendant company was notified, and immediately gave the matter his attention, sending for the engineer. The latter made several unsuccessful attempts to remove the obstruction. The feasibility of cutting the cage of the car, and removing the passengers, some 15 or 20 in number, was considered, but abandoned; and the engineer finally sent his assistant to the top of the elevator shaft, with instructions to slacken the ropes controlling the action of the machinery. He was not told what the

trouble was, or given any instructions, so far as appears, as to what results were expected to follow his action. The engineer, in the meantime, remained near the elevator car, and when the ropes were slackened he attempted to remove the bunting which had caused the disturbance. In doing so, the rope controlling the governing mechanism was thrown from the wheel or pulley, and the car descended to the basement without any control over its actions except such as was afforded by the safety cut-off, which in a measure modified the force of the contact of the car with the foundation. Some of the witnesses testified that such was the force of the fall that the car rebounded several feet. The engineer was shown to be a competent person, who had been in charge of the elevators of the defendant for several years. The negligence on which to charge the defendant with liability must be found, if at all, in the manner in which the machinery and apparatus were operated. The learned trial court submitted this question to the jury, with the statement that the defendant owed the plaintiff the duty of operating its elevator with the "highest degree of care and skill."

On the part of the defendant, it is urged that this case comes under the rule laid down in those cases where the servant or employé finds himself in the presence of an emergency, and uses his best judgment as to what shall be done to avoid an accident; but we are of opinion that this is not the rule which should govern. There was no emergency, in the sense that any action was necessary to avert a catastrophe. The car had come to a standstill. All of the machinery was in good order, and, should the car start, under the conditions that existed at the time the engineer was called, it would be in the full control of the young man who was operating the levers. It is true that there were several women imprisoned, some of them very much frightened and hysterical, but, so long as the car remained stationary, there was no great danger of harm coming to them. There were 15 or 20 human beings in a position of comparative safety. It was necessary, of course, to get them out of the car. But can there be any doubt, under the circumstances, that the defendant owed these passengers the duty of exercising the very highest degree of care and skill in accomplishing this result? Had the defendant the right to try any experiments in lowering this car, without taking every precaution which was possible to insure the safety of these persons? Obviously, there was no such right; and if the defendant, relying upon the efficiency of its safety appliances, so operated its car that injury was done the plaintiff, there is no reason to doubt her right to recover. It was not the duty of the plaintiff upon the trial to point out a better way of releasing the persons in the elevator. The defendant owed to the plaintiff, in common with others, the absolute duty of landing her safely from the car, so far as such a result was possible by the exercise of the highest skill and care; and it is hardly to be doubted that this could have been accomplished had the defendant made the preparation necessary to insure the safety of those who were imprisoned within the elevator, and who were at the time in no immediate danger of bodily injury. In the case of McGrell v. Building Co., 153 N. Y. 265, 47 N. E. 305, the court, in commenting

upon the proposition that the defendant, in operating its elevator, was bound to exercise the utmost care and diligence, concedes that this may be so as to the machinery and appliances by which an elevator is moved and controlled in its ascent and descent, where a failure to do so would be liable to cause great loss of life, but that as to the surroundings of such elevator the defendant is charged only with that reasonable degree of care which an ordinarily prudent person would exercise. "The requirement of the greater degree of care," say the court, "is dependent, not so much upon the actual apprehension of danger, as upon the consequences likely to result from a defect in the machinery and appliances. In cases where less serious results are to be expected, and in cases where danger is not to be apprehended, if due and proper care is observed by the passenger, the owner is responsible only for the want of ordinary and reasonable care."

In the case at bar, the danger to be apprehended, if control of the car was lost, was great. The car was heavily laden with human beings, and was suspended between the second and third floors above the basement. If it fell, and the safety appliances failed to work, there was every reason to believe that many of the passengers would be seriously injured; and the degree of care which the defendant was bound to exercise was measured by the danger which was to be apprehended from the circumstances as they were disclosed to the defendant. We are of opinion that the evidence was sufficient to justify the conclusion of the jury, if the rule of law laid down was correct, and upon this point we are satisfied that the learned trial court was not in error. The defendant could not permit the elevator car to get beyond its control, where it had the means and the opportunity of preventing it, under the circumstances of this case, and rely upon its safety appliances to protect the persons in the car. It owed these passengers a higher duty than trying experiments. It should have taken every precaution reasonably possible, and, having failed in this duty, it must answer in damages to those who have suffered through its negligence.

We find no exceptions which are available upon this appeal, and we are unable to discover that the rights of the defendant were in any degree prejudiced by anything which occurred upon the trial of this action. While the verdict is for a large amount, if the evidence in behalf of the plaintiff is true—and this question has been passed upon by the jury in reaching its verdict—it can hardly be said that the sum is so out of proportion to the damage sustained as to be excessive. A young woman of 24 years, permanently injured in her spine and limbs, who was confined to her bed the greater part of the year, and whose nervous system seems to have been seriously disturbed, cannot be held to be overcompensated by the verdict which the jury has rendered.

We have reached the conclusion that the judgment appealed from should be affirmed, with costs. All concur.