BRIDGET QUINN, as Administratrix, etc., of PATRICK P. QUINN, Deceased, Appellant, *v.* WILLIAM P. BAIRD, Respondent.

*Negligence — death caused by the caving in of a trench dug for a water pipe.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate, it appeared that the defendant was laying water pipes in a trench under a contract with the city of New York, which required him to shore the sides of the trench whenever called upon by the engineer of the water department, who had charge of the work on behalf of the city; that one morning a portion of the trench caved in, killing the plaintiff's intestate, and it was found upon investigation that an old water pipe, about five feet from the side of the trench, the location of which was known to both the defendant and the engineer, had "sweated," disintegrating the earth about the pipe, although no indication of this appeared upon the side of the trench.

The evidence showed that there was a boiler and engine astride of the trench in the vicinity of the cave-in, and that rock had been blasted at a distance of 100 feet or more, but it did not appear that these circumstances contributed to the accident.

It further appeared that the defendant employed competent foremen, and also an experienced shorer, and supplied them with the necessary lumber, and gave them directions to shore the trench whenever necessary; that the defendant's superintendent and shorer examined the trench at the point where the cave-in occurred, but discovered no indication that any shoring was necessary. The city engineer, who had examined the trench at the point in question, a day or two before the accident, testified that in his opinion no shoring was required, and that he had given no direction to the defendant to protect the trench.

*Held,* that there was no evidence that a careful and prudent man could have anticipated that the side of the trench would cave in; and that the complaint was properly dismissed.

BARRETT and RUMSEY, JJ., dissented.

APPEAL by the plaintiff, Bridget Quinn, as administratrix, etc., of Patrick P. Quinn, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 10th day of July, 1899, upon the dismissal of the complaint by direction of the court after a trial before the court and a jury at the New York Trial Term, and also from an order entered in said clerk's office on the 27th day of June, 1899, denying the plaintiff's motion for a new trial made upon the minutes.

*Richard T. Greene,* for the appellant.

*J. Woolsey Shepard,* for the respondent.

Ingraham, J. :

In our view of this case there is no fact about which there is a substantial dispute, the only question being whether or not the jury were justified in drawing from the facts the inference that the defendant was negligent in the performance of any duty which he owed to the plaintiff's intestate. It appeared that the defendant was engaged in laying a line of water pipes on Fifth avenue under a contract with the city of New York; that for that purpose he had excavated a trench on the east side of Fifth avenue between Forty-fourth and Forty-fifth streets. This trench was about seven feet at the top and five to five and a half feet wide at the bottom, and about nine feet deep. It was cut through solid earth which did not appear to have been before disturbed. Under the contract with the city the defendant was required to shore the sides of the trench whenever called upon by the engineer of the water department, who was in charge of the work on behalf of the city. Mr. Birdsall, the city's engineer, testified that he had examined this particular trench daily; that in his opinion there was no indication of any tendency to cave in; that no shoring was necessary, and that he had not given direction to the defendant to protect the sides of the trench. It also appeared that five feet away from this excavation a water pipe had been laid by the city of New York many years before and that both the engineer and the defendant had knowledge of that fact. There was also constant traffic upon Fifth avenue, but the evidence is undisputed that the traffic at this time was light, and that nothing unusual happened which would impose any particular burden upon the surface of the ground. There was also evidence that astride this trench there was a boiler and engine, which had been used to furnish steam for drills used in blasting rock necessary for the excavation, and in hoisting earth from the trench, but at this particular point no rock had been blasted. There is evidence, however, that rock had been blasted at a distance of one hundred feet or more. This engine and boiler were not immediately over the spot where the earth caved in as hereafter referred to, the commencement of the cave being about five feet from the end of the plank upon which the boiler was placed. It seems that on Monday morning, September 26, 1896, the plaintiff's intestate, with other men who were engaged in laying the water pipes, went to the

bottom of this trench under the direction of the defendant's superintendent, and began to level off the bottom of the trench to provide a bed for the water pipe to be laid ; that about an hour and a half after the men went to work, the earth upon the west side of the trench suddenly caved in, burying several of the men, including the plaintiff's intestate, who lost his life, and this action was brought by his administratrix to recover damages thereby sustained by his next of kin.

There was nothing to indicate from the nature of the soil or its appearance at the time that this trench was liable to cave in; nor was there any evidence to show that it was customary in excavations of this kind through earth of the character indicated to shore up the sides of the excavations.   On the contrary, every one of the witnesses examined, who had had experience in this kind of work, testified that he deemed such shoring unnecessary.   It further appeared that the defendant had employed competent foremen and also an experienced shorer, and had supplied them with the necessary lumber and had directed them to shore the trench whenever necessary ; and that the defendant's superintendent and shorer examined this particular locality to see if any shoring was necessary and could discover no indication that it was.   The city engineer, who had examined the trench at this locality a day or two before the accident, also testified that he could discover no indication that any shoring was necessary ; that, in his opinion, it was not required, and that he had given no direction to the defendant to protect the trench.   After the cave-in, an examination of the trench disclosed the fact that this old water pipe, about five feet from the side of the trench as originally excavated, had been " sweating," and that there was considerable moisture, which tended to disintegrate the earth about the pipe ; but there was no indication of this sweating from the side of the trench as originally excavated.

We have thus a case which presents no evidence upon which the jury could find that a careful and prudent man, in doing this excavating, could anticipate that the side of the trench would cave in; and, while shoring would probably have prevented the accident, there was no indication that such an accident was to be apprehended, and nothing to justify a finding that the defendant neglected any means which were customary in excavations of this character, or which a prudent person would have adopted to render the trench a safe place to work.

The court below dismissed the complaint upon the authority of *Del Sejnore* v. *Hallinan* (153 N. Y. 276) and *McGrell* v. *Buffalo Office Bldg. Co.* (Id. 265). In the latter case the court says, in discussing the duty of the employer: "While it was the defendant's duty to provide a safe and suitable car, appliances and other machinery for the operation of its elevator, and for the accommodation of its passengers, and to exercise strict diligence in that respect, still the law did not impose upon the defendant the duty of providing for their absolute safety, so that they should encounter no possible danger or meet with no casualty in the use of the appliances provided;" that his duty is not to be estimated by what, after an accident, then first appears to be a proper precaution against a recurrence of it. In *Del Sejnore* v. *Hallinan*, which was to recover for an accident causing the death of the plaintiff's intestate from the caving in of a trench, the testimony was very like that in the case under consideration. There a civil engineer in the employ of the village, superintending the work on behalf of the village, testified that it was a part of his duty to look after the safety of the work and with reference to the necessity of shoring the trenches in case of danger, and that at no time did he observe anything indicating a liability of the banks to slough off or cave in; and the court says: "Here we have the testimony of a disinterested witness, an engineer whose duty it was to look after the interests of the village and of the public. He had charge of the construction to the extent of seeing that the defendants performed the work properly and in accordance with the provisions of their contract, and yet to this man it did not occur that there was danger. A sad accident has occurred. It was the duty of the defendants to guard against such accidents as could be foreseen as liable to occur by the exercise of reasonable care, but, under the evidence as viewed by us, the accident was of such a character that prudent men, proceeding with reasonable caution, would not ordinarily have foreseen or anticipated, and consequently the defendants are not chargeable with negligence."

Counsel for the plaintiff endeavors, but we think without success, to distinguish the case last cited from that now under consideration. There is no evidence here that the presence of this boiler and engine contributed or that the defendant could have anticipated that it

would contribute in any way to this accident; nor was there any evidence to justify a finding that the blasting, over 100 feet away, which had happened days before, had any relation to it. We have in this case, as in that, the testimony of all the experts, including an engineer employed on behalf of the city, who was a disinterested witness, that no danger was to be apprehended and that shoring was unnecessary; and to have submitted this case to the ·jury would have allowed them to speculate, from the condition that appeared after the accident, as to what the defendant should have known and done to prevent the accident, when from the condition as it appeared before the accident he could not have anticipated that it was imminent or probable, or upon ascertaining which, as a prudent man, he should have used means to guard against it. The cases cited establish the proposition that the liability of the defendant in such a case rests solely upon negligence, and that, to entitle the plaintiff to recover, it is necessary to prove that prior to the happening of an accident the indications were such that a prudent man would take means to guard against it. We think there is nothing in this case to show that such an accident was to be apprehended or that the defendant was guilty of negligence in failing to guard against an accident of which there was no indication.

It follows that the judgment appealed from was right and should be affirmed, with costs.

VAN BRUNT, P. J., and McLAUGHLIN, J., concurred; BARRETT and RUMSEY, JJ., dissented.

RUMSEY, J. (dissenting):

I think the judgment should be reversed. The undisputed facts are that the defendant was engaged in laying a pipe in a trench in Fifth avenue, in the city of New York. The trench had been dug to a depth of about nine or ten feet and was about six feet wide. The plaintiff's intestate was a pipeman, having nothing to do with the digging of the trench, and whose duty it was to lay the pipe which was to be put into it. In September, 1896, while engaged in that work, the trench fell in. Several men at work within it were caught, and the plaintiff's intestate killed by the falling earth. It was undisputed also that there was no sheet piling in the trench, and that there was an engine and boiler which stood over it. There was

evidence from which the jury might have found that the sides of the trench were nearly perpendicular; that there was paving stone on the surface of the street; that underneath was gravel mixed, and not regular hard pan, but of differing quality and in different layers, and veins from the top to the bottom; that the earth was softer at the bottom than at the top, and that while hard and compact at the top, the sides were of loose earth from six inches to a foot from the bottom, and that the trench was not braced. The jury might also have found from the testimony that the engine was almost immediately over the place where this man was at work and where the falling in of the earth occurred, and that the engine had been working the morning before the accident. Whether the engine stood upon planks placed across the trench was in dispute, and the jury might have found that it did not. There was evidence to the effect that at the bottom of the trench it was moist, and after the accident happened it was discovered that a water pipe, laid near the sides of the trench, had sweated, and the water had exuded into the trench. The defendant admitted that he knew that there were water pipes near the trench; that they were apt to sweat or leak, and that the tendency of this was to loosen the soil. It further appeared that, four or five days prior to the accident, blasting had been carried on but a short distance from the place of the accident, and that the tendency of this was to disintegrate the soil, particularly hard soil such as the defendant claimed that in the trench to be. There was also moisture in the trench from the drip of the engine. The testimony as to the condition of the trench, the precise location of the engine, whether or not the engine had been working on the morning of the accident, and, if so, to what extent, and as to the precise nature of the soil from the top to the bottom, was disputed. The defendant gave evidence tending to show that though there was no sheet piling, yet the nature of the soil was such that it had not been necessary to use that means of protection for the men. This is a general review of the testimony presented on the trial.

The motion to dismiss the complaint was made upon the ground that the defendant's evidence established the fact that the defendant had furnished a reasonably safe place for the men to work, and showed that he had discharged his full duty as required by law in every particular. It seems to me, upon the whole case, that the plain-

tiff had made out a case for the jury in regard to that matter. That the accident occurred was not questioned; and they might have found that the earth which supported the trench at the bottom and sides was such that it might fall in, and that for some reason it had become moist, so that it was less firm than it naturally was, and that this defect might have been discovered upon slight inspection. Upon those facts the jury might have predicated the negligence of the defendant.

The case of *Del Sejnore* v. *Hallinan* (153 N. Y. 274) is not, I think, controlling on this question. It simply lays down the general rule, which no one disputes, that it is the duty of the master to guard his servant against such accidents in performing his work, as, by the exercise of reasonable care, can be foreseen as liable to occur; but he is not liable for a personal injury sustained by the servant through an accident which prudent men, proceeding with reasonable caution, would not have ordinarily foreseen or anticipated. The jury might have found from the facts whether the accident occurred by reason of a cause which a prudent man might have foreseen and anticipated or not. In this case, I think, they might have so found, and for that reason the question should have been presented to them.

BARRETT, J., concurred.

Judgment affirmed, with costs.