## HUBENER v. HEIDE.

(Supreme Court, Appellate Division, First Department. June 21, 1901.)

1. NEGLIGENCE — PERSONAL INJURIES — PASSENGER ELEVATOR — DIRECTION OF VERDICT.

Where plaintiff was injured by the falling of an elevator, and it appeared that there was nothing broken, out of order, or defective about the elevator, and defendant's expert testified that it could have been run safely immediately after the accident if operated carefully, there was no proof of negligence on the part of defendant.

2. SAME — DEGREE OF CARE.

The rule requiring the highest degree of care of a carrier of passengers does not apply to the owner of an elevator in a building, who is only required to exercise ordinary care as to the selection, inspection, and operation of the elevator.

Appeal from trial term, New York county.

Action by Minnie Hubener, an infant, by Susan Hubener, her guardian ad litem, against Henry Heide. From a judgment in favor of plaintiff, defendant appeals. Reversed.

The action was brought to recover damages for personal injuries received by plaintiff on the 4th day of May, 1900, in consequence of the falling of a freight elevator. The defendant was engaged in making and selling candy at wholesale at Nos. 84 to 90 Vandam street, in the city of New York, and owned the factory building, which was nine or more stories in height. The building contained two passenger elevators, each five by five feet in dimensions, and one freight elevator, seven by seven feet in dimension, all of equal speed. The carrying capacity of the passenger elevators, as indicated by the manufacturers, was 3,500 pounds, and that of the freight elevator 4,500 pounds. The freight elevator carried twice as many passengers as either of the other elevators. The elevators were operated by defendant's employés. The freight elevator contained a sign, "For freight only," or, "Freight and no passengers." One Gravenstein, a foreman in defendant's employ, made candy for him by the piece or pound, using, in part, the sixth, seventh, eighth, and ninth floors, and employing his own help. Plaintiff was 20 years of age, and had been thus employed by Gravenstein for three years, and worked on the eighth floor. A large number of men and women, some in the employ of the defendant, and the others in the employ of Gravenstein, worked in this building. These employés had customarily, with the knowledge and apparent acquiescence of defendant's superintendent, and without objection, used the freight elevator, mornings, to convey them from the third floor, where their dressing room was located, to the respective floors on which they were employed. The evidence indicates that there was a rule permitting such use of the freight elevator in the morning. At about 7:30 a. m. on the day in question, plaintiff, with about 30 other employés, entered the freight elevator on the third floor, which, after it had started up a few feet, and before it had reached the fourth floor, dropped to the bottom, and that plaintiff's foot was injured. The evidence on the part of the plaintiff tended to show that the elevator

dropped suddenly, and went down with a crash. The man who was operating the elevator had operated it for three years, and testified that there was one steel cable to pull when he wanted to go up, and another to pull when he wanted to go down; that he was pulling the cable to move the elevator up; that it started up, but, after going two feet, went down; that he did all he could, but his hands were burned, and he was unable to get control of it; that the cable did not break, and the elevator did not descend with sufficient rapidity to throw out the clamps designed to stop its fall in case a cable should break; and that he never had experienced any difficulty in controlling before. There is no satisfactory evidence as to the weight of the load that was being carried by the freight elevator at this time. The defendant's engineer testified that the elevator was put in by reputable builders; that it was carefully inspected, both before and after the accident, and was in proper working order, except that the automatic stop which strikes the clamp was broken, but that, in his opinion, it had been broken by the elevator bounding up and down after descending; that, if operated carefully, the elevator could have been run from the top to the bottom after the accident without alteration or repair; and that, if the operator would just let his hands go off the cable, the elevator would catch in the cable as it reached the bottom and stop itself. The court assumed that the plaintiff was free from negligence, and that the defendant was guilty of negligence, and took this question from the consideration of the jury, and submitted only the question of damages. To this ruling, defendant excepted.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

H. Snowden Marshall, for appellant.

John M. Ward, for respondent.

LAUGHLIN, J. We think that the learned trial justice erred in deciding that the defendant was liable as matter of law. The evidence tended to show that the elevator had been constructed and installed by a reputable builder, and that it was, on inspection, found to be in good order and repair. The man who operated the elevator was experienced, and his testimony tended to show that he operated it carefully. His negligence is not conclusively established by the opinion of defendant's engineer that the elevator could, with care, be operated safely. The defendant was not an insurer of the safety of those using the elevator, nor was he obliged to use the greatest degree of care that human foresight and ingenuity could devise to provide against accidents. The rule as to the liability of common carriers of passengers does not apply. Defendant was only liable for the omission of ordinary or reasonable care and caution in the purchase, installation, inspection, and operation of the elevator. Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925.

The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.