(36 Misc. Rep. 364.)

## GRIFFEN v. MANICE.

(Supreme Court, Trial Term, New York County. November, 1901.)

1. NEGLIGENCE—EVIDENCE.

Where the evidence shows that an elevator was made by a competent manufacturer, and had been duly inspected on the day of the accident, and that, when the elevator bumped upon the springs at the bottom of the shaft, the counterbalance weights, weighing 2,000 pounds, broke and fell down upon the car, and there is no proof of any similar accident, or any sufficient explanation of the one by which plaintiff was injured, a verdict for plaintiff will not be allowed to stand.

2. SAME—PASSENGER ELEVATOR.

An owner of a passenger elevator is required only to exercise ordinary care.

3. SAME—RES IPSA LOQUITUR.

Where there is no evidence as to the cause of a fall of counterbalance weights in an elevator, the doctrine of res ipsa loquitur cannot sustain a verdict in favor of the person injured thereby.

Action by Anna S. Griffen against William De Forest Manice. Verdict for plaintiff. Motion to set aside verdict granted, and complaint dismissed.

R. M. Boyd, Jr., for plaintiff.

Manice, Abbott & Perry (Albert Stickney, of counsel), for defendant.

RUSSELL, J.    Whether the verdict for $7,500, upon the charge of negligence resulting in the death of the husband intestate, can be sustained, depends upon the comparative force, in a legal view, of the principle that the event speaks for itself, in conflict with the limit of accountability for human foresight and precaution, when great effort is made by the person charged with negligence to explain what caused the setting loose of the destructive agency which crushed out the life of the intestate, and yet the mystery of that cause remains.    Can a defendant be charged with a want of foreknowledge and reasonable care to prevent a possible injury, when a legal investigation, thoroughly conducted, fails to disclose how that injury could have been foreseen or prevented?    Is the trial itself a demonstration of the inadequacy of the human mind to intelligently perceive the probable original cause of the accident, even looking after, and not before, the event?

On the 6th day of December, 1898, Walter H. Griffen, secretary of the United States Insurance Company, between 2 and 3 o'clock in the afternoon, took the elevator at the eighth floor of the building owned by the defendant, at the corner of Pine and William streets, in the city of New York, and was killed at the bottom floor by the falling of parts of the ponderous counterbalance weights from the eleventh story, crushing through the roof of the car upon the inmates beneath.    The widow, as administratrix, recovered a verdict on the first trial, upon the instruction by the trial court that the event, unexplained, would justify a verdict, coupled with the farther instruction that the highest degree of care was required in the management of the elevator.    The judgment was affirmed by the appellate division, but reversed by the court of appeals on the erroneous charge as to the degree of care required.    Griffen v. Manice, 47 App. Div. 70, 62 N. Y. Supp. 364; Id., 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922.    On this second trial the conduct of the defense essentially differed from the plan pursued on the first.    At the former trial the defendant rested upon the plaintiff's proof.    On this, a serious and determined effort was made for the defense to exhaust the explainable sources of information as to the power which forced several thousand pounds of iron upwards from their resting place against the stationary framework, and threw parts of the mass out of the guiding rods into the elevator shaft, so that they fell 120 feet below.

The jury found specifically thus:

"(1) Do you find from the evidence that the dropping of the weight on Griffen came from the impact of the lower weights upon the upper ones?    A. Yes.    (2) Do you find from the evidence that the cause of such impact on the occasion of the accident can be discovered by human intelligence?    A. Yes.    (3) Do you find from the evidence that the bumping caused such

impact? A. Yes; partly. (4) Do you find from the evidence that an unexplained continuance of the electric power after the car would have stopped but for such continuance caused such impact? A. No. (5) Could such impact have been foreseen, in the way it occurred, by the exercise of the proper intelligence required? A. Yes. (6) Did any omission of proper care in the descent of the elevator cause the injury to Griffen? A. Yes. (7) Did the negligence of the defendant cause the death of Griffen? A. Yes. (8) Did any negligence of Griffen contribute to his injury? A. No."

And the jury gave a general verdict for $7,500.

The most definite finding of the jury informs us that the weight fell on Griffen because of the impact of the lower set of the counterbalance weights upon the upper ones. This means that some 2,000 pounds of iron vertically ascended within the guiding rods 3 feet, till it met another like quantity in the same rods, raised both 2 feet 10 inches more to the stationary iron beam, and continued its attempt to go higher still until it forced parts of the upper set out of position into the elevator shaft, where they plunged down into the car below, and, the power continuing, even then held them against the iron beam above. No similar occurrence ever happened in this elevator or elsewhere, so far as the evidence shows, and yet this defendant is charged with responsibility for the possible death of ten men below because he did not prevent it. The jury naively say that the bumping of the car on the springs 7 inches below the landing floor partly caused the impact, and it may be that an incidental part of the electric manifestation, which propelled the heavy mass upward so far, may have pushed the car down with some force; but, if a half of the same force had operated below with the same rapidity, a wrecked car with helpless inmates might have received the falling weights, to the destruction of ten lives, instead of two. The car was unshattered, save by the descending iron. The cable held. That car had received eight men at the eighth floor, besides the operator. It went steadily to the fifth floor and took another. It still performed its work in the proper way till within a few feet of the bottom, when it suddenly went more rapidly till it struck the springs with some force, showing that an unexpected power had intervened, which, to a slight extent, affected the descent of the car, while, with gigantic force, it jerked the ponderous weights, which were 120 feet from the motor, upward 10 times as far as they could have gone from any rebound. Can any conjectural opinion of an expert, confessedly limited to a mere possibility, overcome the well-known laws of gravitation and force? The car could not descend over 300 feet per minute, —three miles and a half per hour. The governor prevented a higher speed. The automatic stop, necessarily set at stated intervals, was adjusted for an ordinary load, and was found to have acted. Neither the cables nor any parts of the machinery were broken. The brake took effect, and the electric current was cut off. How, then, could defendant, within the most extended view of human wisdom, have foreguarded against the falling of the weights, or, even ethically speaking, be held responsible for the loss of two lives? Negligence comes from fault of omission or commission. That which could not be foreseen by human vision is not such an error. Looking from the eyes of defendant before the accident, to what should anxious

care to safeguard life from injury in his elevator direct his primary attention? Necessarily, he would first see that the cables and machinery were so secure that a fall would not hazard life or limb. He would provide that the upper gearing was so fixed as to prevent its fall upon the place beneath. He would guard against the counterbalance weights falling in their guides by the side of the car and imperiling lives by the momentum of the rebound, or destruction of their conductors. ·And, if the remote possibility of those weights shooting upwards far beyond their resting place, and forcing themselves out of their sustaining support, could enter his mind, would it even then seem possible, after the precautions he did adopt? For he did obtain his machinery from the Otis Company, which furnished the best it could give, and its standing was as high as that of any other, and secured periodical inspection from that company and an insurance company, both of which were highly interested to detect any fault and suggest repairs at his expense, as well as required his own engineer to daily inspect. He was running that elevator after the inspection that very day of the accident by the city inspector. He had in order the wheel, slack-cable stop, and automatic stop, each of which operated to both shut off the current and apply the brake. He had a competent engineer and operator. Can he, then, be held responsible for inertia or lack of wisdom in not preventing an unforeseen event, which never occurred before, and the cause of which is insoluble even to electrical experts? And, however seductive it may be to a jury, if not to a court, to go to extreme lengths in holding elevator owners to great responsibility in carrying such precious freight as human lives in mid-air, is not the general welfare better preserved by requiring the necessary attention to obvious danger, rather than by exciting mental distraction in speculations as to remote possibilities, and thus retard convenience and business expedition by precautions which do not insure safety?

There was no proof of direct or constructive notice that any defect existed. The casual previous bumping of the car upon the springs was not uncommon to elevators, or significant of danger. One of the plaintiff's experts testified that it might be owing to incorrect setting of the automatic stop. That stop necessarily would not be changed with every one of the hundreds of daily trips, but must be graduated for average loads. It did not signify that the machinery was out of order, for it was in order. Nor is there any distinct proof of a bumping previous to the accident, and after the last setting of the automatic stop. If the car had bumped on the springs a hundred times and never produced harm in a million descents, how could defendant have foreseen, if the supposition be conceivable at all, that on this day it would hurl these weights upward beyond where they had ever gone, and force them out upon himself or his patrons in a car below? And, if the drum revolved a quarter to a half a revolution after the brake was applied, can we say it was caused by the brake slipping on the cylinder with only ordinary electric power used, when we see the extraordinary force of the power on the weights above? And, standing them upon this doubtful assumption, we must still further assume that a revolution, at the extreme of only three

and a half feet, could pull upwards these thousands of pounds of iron over two feet farther, and still continue its force, to connect the revolution with the rise.   And a guess that the dead operator may not have turned the wheel in time is unsustained by the position of the brake after the accident, and is hardly consistent with the determined effort of plaintiff's counsel to show that defendant settled with him as an innocent victim.   The more deeply we analyze the facts surrounding this accident, the more the conviction grows of the necessary application of the question of reasonable human endeavor to the rule that the circumstances of an event may speak for its cause. Presumptions designed to evidence fault cannot be used to punish innocence.   The only liability which rested upon this defendant was the exercise of reasonable foresight and effort.   This rule has always been so applied in the various cases coming before the court.   The citations given below are but a few of those which recognize its certainty:   Ordinary foresight and prudence is the care required. Hubener v. Heide, 62 App. Div. 368, 70 N. Y. Supp. 1115.   So applied where the bonnet to a steam valve blew off.   Reiss v. Steam Co., 128 N. Y. 103, 28 N. E. 24.   If the defect in the chain could not have been discovered by ordinary care, even though ordinary use might cause it, the verdict cannot be sustained, and the court of appeals will examine the facts to see if the jury acted upon anything beyond conjecture.   De Graff v. Railroad Co., 76 N. Y. 125, 129, 131.   The plaintiff must show affirmatively that the cause of the defect was the one for which defendant was responsible, to justify recovery, where more than one cause might have occasioned it. Searles v. Railway Co., 101 N. Y. 661, 5 N. E. 66; Taylor v. City of Yonkers, 105 Ill. 202, 11 N. E. 642, 59 Am. Rep. 492.   The use of an elevator without any similar accident aids strongly in determining that the jury was not justified in finding the defendant in fault. McGrell v. Building Co., 153 N. Y. 265, 47 N. E. 305.   If reasonable prudence could not foresee that an injury was likely to come by proximate cause, defendant is not liable.   Beetz v. City of Brooklyn, 10 App. Div. 382, 41 N. Y. Supp. 1009.

The care used by this defendant in the selection, inspection, maintenance, and repair of this elevator was all that human skill may be expected to observe.   He cannot be held responsible for not averting so unprecedented an event as that which caused the death of this intestate, or for not connecting any previous manifestation of the electric power furnished to his motor with the probability that it would act with such violence upon the counterbalance weights.

The findings of the jury, except the first, with the general verdict, are set aside, the complaint dismissed, and a verdict directed for the defendant.   Ordered accordingly.