based upon a misconception of the law, and should not be permitted to stand. The judgment appealed from should be reversed.

Judgment of the County Court of Kings county reversed, and proceedings dismissed. All concur.

(86 App. Div. 48 )

### FAHNER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. CARRIERS—GLASS DOORS IN STATION—INJURY TO PASSENGER—NEGLIGENCE—QUESTION FOR JURY.

Plaintiff, in passing out of the station of defendant's elevated railroad to take his car, was obliged to pass through a doorway in which defendant maintained two swinging doors. A passenger preceded him, and permitted one of the doors to fly back in his face. To avoid injury, he threw up his arm, which passed through the glass panel on the door, cutting him seriously. The glass was double-thick window glass, and had been used by defendant in similar doors for a series of years without any one being hurt before. Held insufficient proof of negligence to go to the jury.

Appeal from Trial Term, Kings County.

Action by William C. Fahner against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before BARTLETT, WOODWARD, HIRSCHBERG, JENKS, and HOOKER, JJ.

I. R. Oeland, for appellant.
Carl J. Heyser, for respondent.

WOODWARD, J. The plaintiff entered the station of the defendant's elevated railroad at Fulton and Cleveland streets, East New York, paid his fare, and was about to pass out of the station for the purpose of taking a car. In doing so, he was obliged to pass through a doorway, in which the defendant maintained two swinging doors; these doors swinging in both directions, as was shown to be common in public places. These doors were of wood, about two feet six inches wide, and at a height of three feet and ten inches from the floor were two glass panels, each about ten inches wide, with a wooden cleat or support running between them, so that the upper half of the door presented two panes of glass ten inches wide and about three feet long, set between the wooden cleat and the sides of the doors, which were three or four inches wide. As the plaintiff approached these doors a passenger preceded him, and, passing through, permitted one of the doors to fly back in the face of the plaintiff. To prevent the door striking him, the plaintiff threw up his arms, which passed through the glass in the door, cutting him quite seriously. He brings this action to recover his damages, alleging negligence on the part of the defendant in maintaining these doors. Upon the trial the learned justice presiding submitted to the jury whether the defendant ought to have anticipated that an accident of this character was likely to occur, and to have guarded against it by placing a glass within the doors which would have been capable of withstanding the con-

tact; and the jury has found a verdict for the plaintiff, upon which judgment has been entered for $536.77. The defendant appeals.

It may be assumed that the plaintiff, in raising his arm to avoid coming into more serious contact with the door, was not chargeable with contributory negligence. He appears to have been following the usual course of passengers in seeking access to the trains of the defendant, and the jury might properly reach the conclusion that he was in the exercise of reasonable care. A more serious question is presented by the denial of the defendant's motion to dismiss the complaint upon the ground that the plaintiff had failed to establish negligence on the part of the defendant. The plaintiff testified that the glass in these doors was not—

"Heavy plate glass. It was a light pane of glass. * * * There was nothing between me and the glass. It was simply the body of the door below that was of wood, and there was glass above, and on the level with my hand it was glass, and there were no bars or other protection across the glass. * * * I lived in the vicinity of this station at the time, and I am living there about four years. I had been accustomed to taking the train at this same station during all of that time—of going through this same kind of door. The door is changed since then. It was an ordinary door, with glass panels in the top of it, at that time, and the casings ran outside of the doors. * * * I observed the doors on this station after my injury for several days afterwards, for a month afterwards. Those doors have been changed since, but not for quite some time after it. They were not changed on the 30th of March," the day on which the diagram in evidence was made.

This is the entire testimony of the plaintiff, in so far as it has any bearing upon the question of defendant's negligence. His witness Schillinger, an architect, testifies to the diagram of the doors, and says that there were no bars across the door. He says:

"I have seen other doors of this character in public places—lots of them. * * * I have done lots of them myself."

He also testified that, from his observation and experience, doors of this character were usually fitted with plate glass; that—

"They generally have plate glass and a striking plate on them, you know—see? * * * The striking plate is on the sill—on the jamb. That is what they are supposed to put their hands on. They are not supposed to put their hands against the glass. There is nothing there to put their hands on, excepting the glass in these doors that I am speaking of. There is nothing covering the glass. The frame of the door from the glass over is 4″ wide."

This is the plaintiff's entire case, in so far as it relates to the defendant's negligence. The doors appear to have been of the same general character commonly used in public places. There is the clear inference from the plaintiff's testimony that they had been in use at this station, through which he had been accustomed to pass at frequent intervals for a period of four years, at least; and there is no suggestion that any one else was ever injured by these doors, or that anything ever occurred which was intended to suggest to the defendant that such an accident as the plaintiff sustained was likely to occur. There was no proof that it had been found necessary at other places to place guards over the windows in similar doors, or that the plate glass which the plaintiff's witness testified was commonly used was capable of a greater resistance than that which was used by the defendant, or that the glass which was actually used was inferior, for the purposes and

under the circumstances in which it was used, to plate glass. The defendant's only witness, a carpenter, testified that he had been in the employ of the defendant for eight years, and that he had charge of the repairs about the various stations; that he remembered the occasion of the breaking of the glass at the Cleveland street station, and that he made the repairs there; that the broken glass was what was known as "double-thick glass." He said:

"There was plate glass in there one time, but we made two lights out of it, so we put in double-thick glass. That plate glass was three-eighths of an inch thick, and the double-thick glass is a little over an eighth of an inch thick. It might have been two years ago when the plate glass was in there. There is a support put up through the center of it; that is an inch that is wood, and an inch and a quarter thick—inch and a quarter by two and a quarter. A wooden bar put up through the center of the door. It formerly was all one plate. Now it is two plates with a space, a frame between. * * * I heard of accidents to these doors when they are broken. Notice comes to me about it. I am required to repair them. I never before, during my experience with the company, knew of this door, or any of the similar doors, being broken by passengers, putting their hands through. I never heard of anybody putting their hands through. I have often heard of glass breaking, the wind breaking it, and so on. I never heard of a passenger being injured by one of these doors, as I remember."

The witness subsequently testified that, when he referred to the wind breaking the glasses, he meant that the wind blew the doors open, and they struck against the stop with such violence as to break the glasses; and he said that the glass used in the doors where the plaintiff was injured was the thickest glass they have to put in doors, aside from plate glass. "That is the only kind we use on the road; that is, for that size. That is what is generally used on the road, and has been for years. * * * We never use plate glass where we have a strip up through the center. It is only where it is one big light of glass that I use plate. I can't use the thin then."

It thus appears from the undisputed evidence in this case that the defendant has used glass in its doors of the same kind that was in the door where the plaintiff was hurt for a series of years, and that this use was general over its system where glass of the same size was used, and that the witness, who was in a position to know of these accidents, because he was called upon to make the repairs, in a period of eight years had never heard of any person or passengers being injured by the breaking of one of these glasses. He had known of their being broken by the action of the wind, and this appears to have been the only thing which their experience had warranted them in guarding against. This, it seems to us, brings the case within the rule so often asserted, that a carrier of passengers is not bound to foresee and provide against casualties never before known and not reasonably expected, and that his duty is not to be estimated by what, after an accident, then first appears to be a proper precaution against a recurrence of it; and it has been held that this rule is not confined to common carriers, but is applicable generally to negligence cases. Dwyer v. Hills Bros. Co., 79 App. Div. 45, 46, 79 N. Y. Supp. 785, and authorities there cited. As a general rule, when an appliance or machine or structure not obviously dangerous has been in daily use for years, and has uniformly proved adequate, safe, and convenient,

its use may be continued without the imputation of culpable imprudence or carelessness. Lafflin v. Buffalo & Southwestern R. Co., 106 N. Y. 136, 141, 12 N. E. 599, 60 Am. Rep. 433. In the absence of any evidence that any one had ever been injured by the use of double-thick window glass under the circumstances disclosed by the evidence, and where the evidence is undisputed that similar glass had been used in the door where the injury occurred for two years, and upon the defendant's railroad system generally for a number of years, and that for a period of eight years one in a position to hear of such an accident, if it had occurred, had never learned of such a case, it would seem that it was error to permit the jury to speculate upon the question of the defendant's negligence. The case is well within the rule that where an accident is not the reasonable, natural, and probable result of the situation, which ought to have been foreseen by the defendant in the exercise of the degree of care exacted from a carrier of passengers, no liability follows. Ayers v. Rochester Railway Co., 156 N. Y. 104, 108, 50 N. E. 960, and authorities there cited. So far as the evidence discloses, the defendant may, in the exercise of a sound judgment, have chosen double-thick glass instead of plate glass for use in its doors; and, even where it established that plate glass was better, a mere error in judgment is not negligence. So far as the record discloses, there was no reason to anticipate that any one would be injured. The only purpose of the glass in the doors was to prevent collisions between persons using the same, or for lighting the inclosure, and the experience of the defendant warranted it only in anticipating the accidents which had previously befallen these doors. Within the station, where the results of an accident were not likely to be serious, and in cases where danger is not to be apprehended, if due and proper care is exercised by the passenger, the rule is well established that the owner is responsible only for the want of ordinary and reasonable care (McGrell v. Buffalo Office Building Co., 153 N. Y. 265, 271, 47 N. E. 305, and authorities there cited); and clearly the jury would not be justified in finding negligence in using double-thick glass in place of plate glass, where the evidence did not show that plate glass was better for the purpose than the glass actually used, or that there was any reason to anticipate that the accident complained of would, in the ordinary course of events, result. There was no evidence that it was customary to place guards over glasses used in swinging doors, or that such guards were necessary to the safety of passengers, so that the only question of the defendant's negligence was based upon the quality of glass used, without any evidence to show that plate glass was safer than the glass which was found in the door at the time of the accident.

The judgment and order appealed from are reversed, and a new trial granted; costs to abide the event. All concur.