plaintiff of such a conversation. There are also the significant circumstances already adverted to of the shipménts of the flour, the retention of the invoices, the presentation of the drafts, and the notification of the delivery of the cars, and no disclaimer of any kind from the defendants. I think these circumstances, with the testimony of Bowlin, amply justify the conclusion reached by the court that there was an extension and a waiver of strict performance as to the time of delivery of the original agreement.

Judgment should be affirmed, with costs.

(98 App. Div. 406)

### MADDEN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. CARRIERS—INJURY TO PASSENGER—NEGLIGENCE—EVIDENCE.

    In an action against a railroad company for injuries to a passenger who was crowded by an excursion crowd so that his hand was forced through the glass in a car door, evidence *held* insufficient to support a finding that defendant was negligent.

Appeal from Special Term, Ontario County.

Action by Charles R. Madden against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Daniel N. Beach, for appellant.
E. A. Griffith, for respondent.

SPRING, J.  The plaintiff attended a fireman's parade at Geneva on the 6th of August, 1903. He purchased a regular ticket for Shortsville, 13 miles from Geneva, and was at defendant's station to take the train leaving for Shortsville about 10 o'clock in the evening. He went in the smoking car, and, finding no vacant seat, started for the second coach back, and met his brother and an acquaintance named Mannix. The three proceeded to the second coach, Mannix leading, when they were met by a crowd coming from the rear of the car, and the aisle at the forward end was filled. The crowd surged against Mannix, pushing him against the plaintiff, and the latter was turned around and his hand forced through the glass pane in the upper part of the car door which was open against the toilet room. His hand was severely cut, and he has recovered for his injuries. Three extra coaches were taken on this train to accommodate the crowd at the station who were en route for home. A special train from Geneva was to follow the regular train in 25 minutes, which fact was cried out at the station by the employés of the defendant, although the plaintiff did not hear the announcement. Whether the empty coaches were attached to the regular train at the time the plaintiff was injured does not appear. The train had not started at the time of the accident, and was at the station for 15

minutes. The crowd, or a considerable portion of it, in their anxiety to get started homeward, apparently rushed into the car where the plaintiff and his companions were, endeavoring to find vacant seats. The passengers meeting in the aisle were not quarrelsome or boisterous, but some were going one way and some the other, and in the jam and bustle plaintiff was injured. The plaintiff and his witnesses testified they saw no trainmen, although they gave no heed as to whether any were on duty. The defendant's witnesses testified that the conductor, with several trainmen, were present, looking after the boarding of the cars.

We think the evidence fails to establish the negligence of the defendant. For aught that appears, there were ample accommodations for the transportation of all the passengers, but in their impatience they crowded into the nearest car, and rushed through it pell mell, either aimlessly or to obtain seats. The defendant could not reasonably be expected to check this onrush. The casualty was an unusual one, and could not have been apprehended by the defendant. That a passenger would be jostled by his fellow passengers, and, as a consequence of the impact, his arm be jammed through the window of the car door, was not within the range of reasonable foresight. While the plaintiff was a passenger with a regular ticket, and entitled to the consideration due a passenger in the custody of a common carrier, yet he knew there was a crowd of excursionists, and that the ordinary conditions did not exist. The defendant apparently had made adequate preparations to take care of all the people desiring transportation, and in effect so advised them, and before the train started all on board may have been furnished with seats. The case is within that class of cases where the unexpected occurs, resulting in injury, and for which no legal liability attaches. Fahner v. Brooklyn Heights R. Co., 86 App. Div. 488, 83 N. Y. Supp. 815.

We think this case is distinguishable from Graham v. Manhattan R. Co., 149 N. Y. 336, 43 N. E. 917, Dawson v. N. Y. & Brooklyn Bridge, 31 App. Div. 537, 52 N. Y. Supp. 133, Cattano v. Met. St. R. R. Co., 173 N. Y. 565, 66 N. E. 563, Lehr v. Steinway & Hunters Point R. R. Co., 118 N. Y. 556, 23 N. E. 889, and others upon which the respondent relies. In each of those cases it is clearly apparent that the passenger was exposed to danger because the common carrier was attempting to carry more people than could be accommodated in the car. The precise casualty which resulted from the overcrowding in each case might fairly have been foreseen and prevented. In the present case the accommodations were sufficient, but the crowd piled into one car, filling up the aisle, while the train was standing at the station. The defendant knew there was a large crowd to be transported on its road, and seems to have been alert in providing both extra men and cars to handle them safely. We cannot find that it was remiss in its duty to the plaintiff. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to the appellant to abide the event. All concur.