(47 App. Div. 70.)

## GRIFFEN v. MANICE.

(Supreme Court, Appellate Division, First Department.   January 19, 1900.)

1. CARRIERS—PASSENGER ELEVATORS—NEGLIGENCE—OWNER'S LIABILITY — IN-
   STRUCTIONS.
       The owner of an office building, as to passengers in the elevator, is bound to use the utmost care as to any defect in the machinery or appliances by which it is moved and controlled which is liable to occasion great damage or loss of life; and his duty is similar to that of a common carrier of passengers.

2. SAME—PRESUMPTION OF NEGLIGENCE.
       Where plaintiff's intestate was killed by being struck by a counterbalance weight connected with the control of an elevator in an office building while descending from the office of one of the tenants, an instruction that, if the accident was one which would not have happened in the ordinary course of business if the required degree of care had been observed, the jury might presume that such care was wanting, was correct.

3. SAME—INSTRUCTIONS—REFUSAL—HARMLESS ERROR.
       Where plaintiff's intestate was killed by being struck by a counterbalance weight used in the operation of an elevator in an office building, refusal of an instruction that a presumption of negligence on the part of the owners of the building did not arise from the mere fact that the accident occurred was harmless; the court having charged that plaintiff could recover only from a presumption of negligence arising from their finding that the accident would not have happened in the ordinary course of business if due care had been used, or from their finding of negligence in fact.

4. SAME—TRIAL.
       Where plaintiff's intestate was killed by being struck by a counterbalance weight used in the operation of an elevator in an office building, while descending from a meeting held by one of the tenants thereof, and the proof established a prima facie case of negligence on the part of the

owner, which he failed to rebut, an instruction that a tenant of such building in using the elevator had a right to rely on its being in perfect condition was immaterial.

5. LANDLORD AND TENANT—LEASE—ELEVATOR ACCIDENT—LANDLORD'S LIABILITY—LIMITATION.

Where plaintiff's intestate, an officer of a corporation to which offices in a building had been let, was killed, while descending in the elevator of such building, by being struck with a counterbalance weight used in the operation thereof, the fact that the lease of the offices provided that the owner should not be liable for any loss or injury arising from the operation of the elevator, or carelessness or negligence of any person, did not relieve such owner from liability for negligence in failing to have the appliances connected with the elevator properly inspected and kept in a safe condition.

Appeal from trial term, New York county.

Action by Anna S. Griffen, as administratrix, etc., against William D. F. Manice. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

John E. Parsons, for appellant.
Robert M. Boyd, Jr., for respondent.

PATTERSON, J. The plaintiff sues, as administratrix, to recover damages for the death of her intestate (her husband), which she claims was caused by the negligence of the defendant. The decedent was killed in an elevator used and operated in a shaftway in a building belonging to the defendant; and it is alleged in the complaint, among other things, "that the weights attached to certain cables intended to be used in operating said elevator became detached, and fell with great and extreme force and violence down said shaftway and upon said plaintiff's intestate, and struck him with great and extreme force and violence, so that the said Walter H. Griffen was then and there and thereby thrown with great violence to the floor of said elevator, and crushed, bruised, cut, and mangled by said weights, whereby he, the said Walter H. Griffen, sustained mortal injuries, of which said injuries he, the said Walter H. Griffen, then and there instantly died." The proof shows that the defendant was the owner of a building in the city of New York over eight stories high, and in which there was maintained and operated, for the use of tenants and others, an elevator moved by electricity. Among the defendant's tenants was a corporation styled the United States Fire Insurance Company, of which the plaintiff's intestate was the secretary, and also a director. The company's main office was upon the first floor of the building, but it also was the lessee and occupant of a room or rooms on the eighth floor, in which room or rooms the directors' meetings of the corporation were held. One of the provisions of the lease between the defendant and the insurance company was that the defendant should not be responsible for any loss or injury arising from or during the operation of the elevator, or the carelessness or negligence of any person. On the 6th of December, 1898, the plaintiff's intestate attended a meeting of the directors of the corporation,

and at the conclusion of the meeting entered the elevator car to descend from the eighth to the first floor. The car proceeded at a rapid rate, was not stopped at the level of the first floor, but continued some inches lower, and there seems to have struck something under it, and rebounded. Before the persons in the car could leave it, and almost simultaneously with the rebound, there fell into the car from above several oblong pieces of iron, measuring about 10 inches in length, and each weighing some 30 or 40 pounds, one of which struck the plaintiff's intestate, and he was almost instantly killed. The pieces of iron that fell were part of an appliance connected with the control of the elevator car, which appliance was called the "counterbalance weight." Elevators such as that in the defendant's building are constructed with counterweights at the end of a cable which revolves about drums in a direction opposite to that in which the car is moving. As the car descends, the weights are raised. The effect of a car overrunning a given point in its downward movement is to carry the weights up a distance corresponding to that of the overrun below. The counterbalance weights are arranged in a frame, one oblong piece upon another, and they are held together by rods which pass through slots. The movement of the car is arrested by an automatic brake, and if that fails to operate in the descent of the car, and the counterbalance weights are raised until they meet an obstruction at the top, it is possible that the rods will be forced apart and the weights drop. The evidence in the case is that the frame of the counterbalance weights, examined immediately after the accident occurred, was distorted, and some of the weights were found in the elevator car, and some in the hallway on the first floor. On the trial of the cause the plaintiff gave evidence of the occurrence, namely, the falling of the weights, and of the decedent's death, and generally of the facts hereinbefore adverted to. At the close of the plaintiff's proofs the defendant asked for a dismissal of the complaint, which was denied, and an exception taken. No evidence was introduced by the defendant, who also moved for a direction of a verdict in his favor, which motion was denied, and an exception was duly taken. The case went to the jury under very clear instructions of the court. There was a verdict for the plaintiff, from the judgment entered upon which, and from an order denying a motion for a new trial, the present appeal is taken.

The facts appearing on the record in this case require us to define the legal relation existing between the owner of this building and elevator, and those who by his actual or implied invitation become passengers upon such elevator, and in connection therewith to declare the duty and responsibility resting upon the owner to such passengers, and to inquire as to the application of a rule of evidence by which it was sought to establish the negligent failure to fulfill such duty. The inquiry relates directly to passengers, and not to servants or employés, in respect of whom it was held in Stringham v. Hilton, 111 N. Y. 188, 18 N. E. 870, 1 L. R. A. 483, that the master is bound to furnish only such appliances as are reasonably safe, and to see that there is no defect in those which his employés must use, and that where an appliance or machine not obviously dangerous has

been in constant use for a long time, and has always proved adequate, safe, and convenient, it may be continued without any imputation of negligence or carelessness on the part of the employer. But in this case the question is presented in an entirely different aspect, and it arises on this appeal upon an instruction given by the trial justice to the jury in the following words:

"I will charge you first as to the rule that is applicable to a person having a passenger elevator of this kind. As to the machinery and appliances by which an elevator is moved and controlled in its ascent and descent, an owner is bound to use the utmost care as to any defect which would be liable to occasion great danger or loss of life; and he is, in that respect, subject to the same rule that applies to a railroad company in regard to its roadbed, engine, and similar machinery."

That instruction was tantamount to saying that the duty of the owner of an elevator in respect to the matters mentioned is to be assimilated to that of a common carrier of passengers, whence it would follow that the liability of the owner of an elevator for negligence as to those matters would be the same as that of a common carrier of passengers. It is contended by the appellant, in effect, that the rule laid down was erroneous; that the liability of the owner of the elevator was only that of a landlord to his tenants or others upon the premises by his invitation, and using common appurtenances: and that, before liability for negligence in maintaining such appurtenances in safe and proper condition can be established, it must be shown that the landlord had notice of some defect in, or want of repair of, such common appurtenances, which notice may be either actual, or inferred from circumstances and conditions. It will be noticed that the trial judge was careful to emphasize that the assimilation of the duty and responsibility of the owner of the elevator to that of a common carrier of passengers or of a railroad company was predicable only with respect to the machinery and appliances by which the elevator was moved and controlled. It has been authoritatively held in this state, as to the surroundings and other structures forming a part of the elevator plant, where not so much danger is to be apprehended as may exist with reference to motive power and control, that the relation referred to would not exist, because all that could be required is that degree of care which a reasonably prudent man would exercise. McGrell v. Building Co., 153 N. Y. 271, 47 N. E. 307. But in the same case the learned judge delivering the opinion of the court remarks:

"It may be that, as to the machinery and appliances by which an elevator is moved and controlled in its ascent and descent, an owner is bound to use the utmost care as to any defect which would be liable to occasion great danger or loss of life, and that he is in that respect subject to the same rule that applies to a railroad company in regard to its roadbed, engine, and other similar machinery."

Being subject to the same rule necessarily puts him in the same relationship under that rule. The charge of the trial judge is almost a verbatim repetition of what was thus intimated, but not explicitly decided, in the foregoing quotation from the McGrell Case. We think the intimation of the court of appeals states the true rule applicable to this case. If such an elevator as that operated and used by the

defendant was not a dangerous thing in itself, it is quite apparent that it was something that was constantly liable to become dangerous; and the testimony shows that inspection, general attention, and observation were required in order to keep it operating properly, and that such an elevator, even when perfectly adjusted and set in operation, will not keep in that perfect adjustment and continue to operate properly for an indefinite period of time. There is just as much reason for holding the proprietor or owner of such an elevator to the highest degree of care in the maintenance of the operating and controlling machinery of the apparatus as there is in holding the carrier of passengers to the same degree of care. The passenger in the elevator can know nothing of the state of the machinery. He may be able to observe the surroundings, the condition of the car, and of the entrances to and exits from it; but while in the car he necessarily confides his person to the care and protection of the elevator proprietor, just as a passenger does while in the vehicle of the common carrier.

The view we take of this subject has its support in authority. In the very well considered case of Treadwell v. Whittier, 80 Cal. 575, 22 Pac. 266, 5 L. R. A. 498, the supreme court of California passed upon this precise question, and held that those who operate elevators in lifting passengers should be treated as carriers of passengers, and that the same duties and liabilities rest on them as on carriers of passengers by railway or stagecoach; and, although not insurers of the absolute safety of the passengers, they are bound to the utmost care and diligence of very cautious persons, as far as that care and foresight can go, and are responsible for injuries occasioned by the slightest neglect against which human prudence and prevision might have guarded. In the opinion of the court in that case it is said that the care and diligence required are proportionate to the danger to the persons carried. "In proportion to the degree of danger to others must be the care and diligence to be exercised. Where the danger is great, the utmost care and diligence must be employed." There can scarcely be greater danger imagined than that to which a passenger penned up in an elevator cage or car rising or descending in an inclosed well would be exposed by the breaking of the machinery connected with the operation or control of that cage or car.

The duty and responsibility of the defendant being such as is above indicated, the question arises as to the character and sufficiency of the proof by which the plaintiff undertook to establish negligence of the defendant in the performance of the duty, and by which she sought to visit responsibility upon the defendant for that neglect. That question arises upon an exception to an instruction of the trial judge which was given to the jury in the following words:

"There is another rule which the plaintiff asks me to call to your attention, and I am going to call to your attention the rule that where an accident happens, which in the ordinary course of business would not happen if the required degree of care was observed, the presumption is that such care was wanting; and if you find in this case that this accident was one which, in the ordinary course of business, would not have happened if the required degree of care was observed, you have a right to presume that such care was wanting."

This instruction was equivalent to charging the jury that the maxim, "Res ipsa loquitur," applied in this case. The judge had already stated to the jury that the requirement of the high degree of care to which the defendant was bound was dependent, not so much upon the actual apprehension of danger, as upon the consequences likely to result from a defect in the machinery and appliances, and that that high degree of care was required by reason of the fact of the serious results that might happen in case of a defect in the machinery connected with the elevator. It is quite apparent that the charge of the trial judge was made after careful study and preparation, for the rules he announced for the guidance of the jury are proclaimed in substantially the same phraseology in several leading cases. The maxim, "Res ipsa loquitur," as a rule of evidence, gives rise to a presumption constituting prima facie proof of negligence; but the presumption is, of course, rebuttable. It only throws upon the defendant the burden of explanation. Mr. Patterson, in his Railway Accident Law, treating of presumptions of negligence, states the rule to be that "there is a rebuttable presumption of negligence on the part of a railway in the case of an injury caused by circumstances from which may fairly be inferred a nonperformance of duty on the part of the railway" (Patt. Ry. Acc. Law, p. 438), and cites a great number of cases in which it was held, to use the language of Mr. Wharton in his Law of Negligence, "that the very nature of the accident may of itself, and through the presumption it carries, supply the requisite proof." Whart. Neg. § 421. Those cases are so numerous that they cannot be particularly examined or criticised within the reasonable limits of an opinion, but the cases in New York are very clear in expounding the rule. In Seybolt v. Railroad Co., 95 N. Y. 562, it is stated that while it is true, as a general proposition, that the burden of showing negligence on the part of the defendant occasioning an injury rests in the first instance upon the plaintiff, yet, in an action of this character, when he has shown a situation which could not have been produced except by the operation of abnormal causes, the onus then rests upon the defendant to prove that the injury was caused without his fault. A case which illustrates the application of the rule as applied to carriers of passengers is Edgerton v. Railroad Co., 39 N. Y. 227, in which it was held that the unusual situation of a car leaving the track proved that the track or machinery, or some portion thereof, was not in proper condition, or that the machinery was not properly operated, and gave rise to the presumption that the carrier in some way failed to operate the machinery or keep the track in order, and therefore violated a duty, and that the obligation rested upon the defendant to explain the cause of the accident. The rule applies in this case, because the duty and responsibility of the owner of this elevator were, with regard to the machinery and its operation, similar to that of a common carrier, and the reasoning which would allow the application of the rule of evidence in the case of a railway would allow of its application in this case. The argument, however, is made on the part of the defendant that, in order to give rise to the presumption, something more must be shown; and it is claimed that the later authorities in this state

narrow the scope of the application of the maxim, and require that in the absence of contractual relations between the parties, before the presumption can be indulged in, proof of the circumstances attending the accident must be superadded to the fact of the accident. The case relied on in support of this contention is Cosulich v. Oil Co., 122 N. Y. 118, 25 N. E. 259. In that case the plaintiff was the owner of a vessel lying by a wharf, and the defendant owned a petroleum refinery situated on adjoining premises. Burning oil escaping from the defendant's premises flowed through a pipe to a boat loaded with petroleum, and moored at a wharf of the defendant. An explosion took place on the boat, and burning oil and wood were cast some distance, and fell upon the plaintiff's vessel, setting it afire. That was substantially the only proof given by the plaintiff, and it was held in the court of appeals that it was insufficient to make out a prima facie case of negligence, and that no presumption could be indulged in. The difference between that case and this is so wide that no analogy exists between them, but there are observations made in the opinion of the court, in discussing the presumption arising from the maxim, from which the appellant now claims that the proof in this case was insufficient. But the court in the case last cited also said:

"Sometimes, it is true, the duty which the defendant owes to the plaintiff is of such a nature that proof of the happening of the accident under circumstances and given conditions will be of such legal value as to afford presumptive evidence of negligence and cast upon the defendant the burden of explanation."

That we conceive to be a very concise and very accurate statement of the law applicable in this case. The court proceeded to say in the next paragraph:

"This rule has been applied to the carrier of passengers, especially in conveyances propelled by steam, where the consequences of an accident are frequently fatal to human life; and the public interests require that in such cases the carrier shall use every precaution which human skill and foresight can provide to prevent accident and its results. Even in those cases there must be reasonable evidence of negligence before the defendant can be called upon to relieve itself from the presumption of negligence. But when the thing causing the injury is shown to be under the control of the defendant, and the accident is such as in the ordinary course of business does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on his part. Breen v. Railroad Co., 109 N. Y. 297, 16 N. E. 60; Seybolt v. Railroad Co., 95 N. Y. 562."

These citations plainly and forcibly state all that is contended for by the respondent in this case, and pointedly and accurately declare the rule, which is not impaired by the subsequent remark of the learned judge writing the opinion of the court, that Mr. Thompson, in his work on Negligence, says that it is believed "that it is never true, except in contractual relations, that the proof of the mere fact that the accident happened to the plaintiff, without more, will amount to prima facie proof of negligence on the part of the defendant" (2 Thomp. Neg. 1227), which is an inaccuracy, as is pointed out by Mr. Justice Cullen in Jones v. Railway Co., 18 App. Div. 269, 46 N. Y. Supp. 321, referring to the leading case of Mullen v. St. John, 57 N. Y. 567. We are of opinion that the plaintiff was entitled to rest upon

the presumption of negligence in this case, arising out of the fact of the occurrence of the accident in the manner and from the specific cause shown in these proofs. If the duty and responsibility of the defendant were such as we deem them to have been, the fact of the occurrence, namely, the killing of the plaintiff's intestate by the falling upon him of the counterweight of the elevator, presents such an extraordinary condition as to lead directly to the conclusion that prima facie the want of inspection, supervision, care, and attention to the machinery induced the accident, which is the equivalent of saying that the accident resulted from negligent omission of that degree of care and vigilance which the defendant was bound to exercise. In this view of the case, the trial judge was not in error in refusing to charge certain of the requests made by the defendant, the rulings upon which are now challenged. It is claimed that, even in the view which was taken of the duty and liability of the defendant, the court should have instructed the jury that a presumption of negligence did not arise from the mere fact of the accident itself. As an abstract principle of law, that request embodied a correct rule; but under the circumstances of this case, and the manner in which it went before the jury, the request was only an abstraction. Had it been charged without relation to the correct rule which was charged, it would have tended only to divert the minds of the jury from that correct rule. In that state of the case, we do not think the defendant was entitled to insist that the jury should be instructed in those very words. The court had told the jury that the plaintiff could only recover by their finding either from the presumption or from the fact, as he called their attention to it, that the defendant was negligent.

It is also claimed that it was error for the court to charge that a tenant in an office building had the right, in using the elevator, to rely upon its being in a perfect condition. Precisely what was meant by the word "perfect" is not quite plain. It can scarcely be construed into a judicial declaration that the owner of the building was a guarantor of safety. It might possibly be construed as applying to the question of contributory negligence, but that is not a subject with which, on the proofs, we should interfere with the finding of the jury; and the instruction on any other ground becomes immaterial, if we are right in our conclusion that, as the proofs were made, the defendant was called upon to rebut the presumption of negligence.

There is but one other topic requiring special consideration, and that relates to the covenant in the lease made between the defendant and the United States Insurance Company. We do not construe that covenant as being binding upon the plaintiff's intestate, so as to relieve the defendant from liability for the negligent maintenance of the machinery used in operating and controlling the elevator. We do not mean to decide that the covenant would be binding upon him in any event, but, assuming that he might otherwise be brought within its operation, we do not think its fair interpretation is such as to relieve the defendant from responsibility for neglect in proper care, attention, supervision, and inspection of that machinery and those appurtenances of the elevator which gave way, and caused the death of the plaintiff's intestate.

Under all the circumstances of the case, we cannot say that the verdict of the jury was excessive.

The judgment and order appealed from should be affirmed, with costs. All concur.