(74 App. Div. 371.)

GRIFFEN v. MANICE.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. APPEAL—LAW OF THE CASE.
    A decision of the court of appeals is the law of the case in a subsequent trial of the cause, in so far as the facts are the same as on the appeal.

2. CARRIERS—ELEVATOR—PERSONAL INJURY—LIABILITY.
    Where an elevator installed by a reputable firm has all the appliances known to stop the machinery when the car reaches the bottom of the shaft, even if the operator is remiss in his duties, and the machinery is in perfect order, as shown by various inspections by the person installing the elevator, insurance companies, and the city,—one inspection being made only a few hours before an accident occurring by reason of the unexplained failure of the machinery to so stop, though the car

is properly operated,—there is no liability for the accident, though there has been an occasional bumping of the car on the springs, which was shown not to be uncommon or to have been the cause of the accident.

3. SAME—EVIDENCE—BURDEN OF PROOF.

The plaintiff in an action for injuries received by a passenger through the defective working of an elevator has the burden of showing that the injury resulted from defendant's negligence.

O'Brien and Hatch, JJ., dissenting.

Appeal from trial term, New York county.

Action by Anna S. Griffen, as administratrix, against William De Forest Manice. From a judgment dismissing the complaint, entered on an order setting aside a verdict for plaintiff (73 N. Y. Supp. 559), she appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Robert M. Boyd, Jr., for appellant.
Albert Stickney, for respondent.

McLAUGHLIN, J. This appeal is from the judgment in favor of the defendant dismissing the complaint entered upon an order setting aside a general verdict in favor of the plaintiff, and special findings of the jury rendered in connection therewith. The facts, so far as the same are material to the plaintiff's alleged cause of action, were fully stated on the former appeal to this court (47 App. Div. 70, 62 N. Y. Supp. 364), and on appeal therefrom to the court of appeals (166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630), and it is therefore unnecessary to restate them in this opinion.

The law as laid down by the court of appeals is the law of the case, and binding upon this court, in so far as the facts are the same as upon the former appeal. The court of appeals, in reversing the judgment of this court, held that the defendant owed the plaintiff's intestate the duty of using reasonable care to guard him against and protect him from injury. We are therefore to determine whether the judgment appealed from is right, when the rule as thus declared is applied to the facts as developed upon the trial. Upon the former trial the defendant offered no evidence, and we held that the trial court correctly instructed the jury that the doctrine of res ipsa loquitur applied, and whether or not the defendant had offered a sufficient explanation of the cause of the plaintiff's injuries was a question for the jury, when subjected to the rule that the defendant was obligated "to use the utmost care and diligence" with reference to the appliances used in connection with and in the operation of the elevator in which the intestate was at the time he was killed. This instruction was held to be erroneous, in that the defendant was only obligated to exercise ordinary care. The sole question presented, therefore, on this appeal, is whether or not the evidence justified a finding that the defendant was remiss in his duty in exercising that degree of care which the law imposed upon him, viz., ordinary care for the intestate's protection. And in this connection it appeared that the elevator and all the appliances used in connection therewith were installed by a reputable dealer; that there had been provided all of the

means then known for the prevention of accidents similar to or caused by the one that here occurred. To that end, there had been provided the automatic stop and the slack cable device, either one of which was sufficient, in and of itself, in case the operator was remiss in his duty, to cut off the power to stop the car. The evidence offered on the part of the plaintiff, as well as that offered on the part of the defendant, established beyond contradiction that the machinery used for operating the elevator was in perfect order at the time the accident occurred; that the operator had performed his duty; that each of the devices referred to had played the part designed for it; that notwithstanding these facts the power had continued to work after the car had reached the bottom of the shaft, and by reason thereof the counterbalance weights were forced from the frame in which they were placed, causing the injury complained of. The continuance of the power by which the drum was operated under such circumstances, none of the witnesses were able to explain. But the defendant established, not only by the cross-examination of the experts offered on the part of the plaintiff, but also by its own witnesses, the fact that the machinery was in perfect order; that nothing was broken, out of repair, or that its servant had failed to perform the duty assigned to him; and the plaintiff's witness Thorpe testified upon cross-examination that he had never known or heard of an accident of this kind; that he did not know, and was then unable to state, how any precaution could have been taken, in the shape of improvements to the machinery, which would have prevented it. In addition to this it appeared that frequent inspections had been provided for, not only by the dealers who originally installed the elevator, but also by two different insurance companies and by the authorities of the city, and that an inspection was made by one of them on the very day and only a few hours before the accident occurred, the result of which was to the effect that the elevator, including the appliances used to operate it, was in good order. Under such circumstances, how could the trial court do otherwise, if defendant's duty was to be measured by ordinary care, than set aside the verdict and special findings of the jury and dismiss the complaint? There was no proof, either actual or constructive, of any defect in the machinery, or of a threatened or apprehended danger by reason of its operation. It is true, there was some proof to the effect of an occasional bumping of the car upon the springs, but in this connection it appeared (and the fact was not contradicted) that this was not an uncommon thing, where an elevator was operated as this one was; nor was there any proof that it was an indication of danger, or that the machinery was not properly adjusted. One of plaintiff's witnesses testified that the bumping was due to the setting of the automatic stop, but this manifestly could not be changed at every trip which the car made; nor was there any satisfactory proof that there was any bumping intermediate the last setting of the automatic stop and the accident, and, if there had been, it would not have established liability on the part of the defendant, because, as already said, it was not an uncommon thing, and, so far as appears, no accident had ever occurred by reason of it. McGrell v. Building Co., 153 N. Y. 265, 47 N. E. 305; Burke v. Witherbee, 98 N. Y.

562. Nor was there any proof which would have justified a finding that the accident was due to the oiling of the brake band.

The defendant, under the rule laid down by the court of appeals, was bound to exercise such a degree of care as a man of ordinary prudence would have exercised under similar circumstances. The plaintiff, before she could recover, was bound to show that the intestate's death was due to, and resulted from, some neglect on the part of the defendant,—in other words, that the defendant failed to exercise ordinary care for the protection of her intestate. This she failed to do. · Upon the facts developed upon the trial, a man of ordinary prudence could not have foreseen that injury was liable to be sustained as it was here. It must therefore be held, in view of the care used by the defendant in the selection, inspection, and maintenance of the elevator, under the rule laid down by the court of appeals, that he did all that an ordinary man could be required to do under the same conditions and circumstances.

The judgment appealed from, therefore, must be affirmed, with costs.

VAN BRUNT, P. J., and INGRAHAM, J., concur.

O'BRIEN, J. (dissenting). This action, which is to recover for the death of the plaintiff's husband, who was killed by the fall of elevator weights in defendant's building, 55 William street, in the city of New York, was before this court on appeal from a judgment in plaintiff's favor (47 App. Div. 70, 62 N. Y. Supp. 364), and before the court of appeals, where the judgment of affirmance by this court was reversed (166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630) on the ground that the trial court erred in charging that the defendant was required to use the utmost care and diligence, and is liable for the slightest neglect which foresight might have guarded against, and it was held that he was required to use only reasonable care. The court of appeals held, further, that upon the facts herein appearing the doctrine of res ipsa loquitur applied, and that the covenant in the lease of the deceased, who was a tenant of the building, releasing the owner from liability, does not release him from responsibility, since the right to use the elevator was based on the general invitation to do so. On the new trial the defendant endeavored to show that no reasonable care could have prevented the accident, and that there was no assignable cause for it, and it was shrouded in mystery. At the close of the case a motion to dismiss the complaint was made, as well as one to direct a verdict for the defendant, and the court reserved decision until after the verdict of the jury. The jury were then charged, and it appears that they made the following answers to questions submitted to them:

"(1) Do you find from the evidence that the dropping of the weight on Griffen came from the impact of the lower weights upon the upper ones? A. Yes. (2) Do you find from the evidence that the cause of such impact on the occasion of the accident can be discovered by human intelligence? A. Yes. (3) Do you find from the evidence that the bumping caused such impact? A. Yes; partly. (4) Do you find from the evidence that an unexplained continuance of the electric power after the car would have stopped

but for such continuance caused such impact? A. No. (5) Could such impact have been foreseen, in the way it occurred, by the exercise of the proper intelligence required? A. Yes. (6) Did any omission of proper care in the descent of the elevator cause the injury to Griffen? A. Yes. (7) Did the negligence of the defendant cause the death of Griffen? A. Yes. (8) Did any negligence of Griffen contribute to his injury? A. No."

The jury gave, further, a verdict of $7,500 for plaintiff. Thereafter, decision of the court upon the motions having been reserved, the court rendered its decision that the findings of the jury, except the first, with the general verdict, should be set aside, the complaint dismissed, and verdict directed for the defendant. From judgment so entered, the plaintiff appeals.

The manner in which the questions are presented on this appeal is somewhat unusual, but the final ruling of the court seems to have been on the motion to dismiss the complaint after both sides had rested, rather than on the motion to set aside the verdict on the grounds stated in section 999 of the Code of Civil Procedure. The plaintiff's rights, therefore, are to be considered; bearing in mind the rule that, if there is evidence sufficient to support the inferences of defendant's negligence and the plaintiff's freedom from contributory negligence, it is the province of the jury, and not of the court, to draw them. McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282. The law of this case being that the defendant was required to use only reasonable care, the facts must be examined, to determine whether upon this issue there was sufficient evidence to go to the jury. In defining, however, what is "reasonable care," Judge Cullen, writing for the majority in the court of appeals, said (166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630), "The care must be commensurate with the danger." There being no suggestion that the plaintiff was guilty of contributory negligence, the single question presented is, would the evidence warrant an inference by the jury that the defendant was guilty of negligence? The plaintiff made out a prima facie case by showing the nature and attending circumstances of the accident, which justified the application of the doctrine of res ipsa loquitur. To meet this prima facie case, the defendant sought by cross-examination of plaintiff's and by his own witnesses to show that no explanation could be given as to what was the cause of the accident, and that consequently it did not appear what care, if any, could have guarded against the fall of the weights.

As to the maintenance and operation of the elevator, it appeared that in the basement there was a drum moved by electricity supplied from an outside source, to which was attached a rope winding about it, which extended to the top of the shaft, and over a wheel or pulley down to the top of the car; the revolution of the drum thus raising the car. Attached also to this drum was another rope, which moved in the opposite direction from the first rope, and passed to the top of the shaft, and over a wheel or pulley down to a set of lower weights, which ran up and down between vertical bars; moving up as the elevator descended, and vice versa, and serving to counterbalance the drum and steady the motion. There was another rope attached to the top of the car, which ran up the shaft and

over a wheel or pulley, down to what are called the "upper weights," which also moved between vertical parallel guides, and were adjusted so as to go up and down, and always three feet above the lower weights. These upper weights counterbalanced the car, and went up as the elevator descended. It was not intended that they should come nearer than within two feet of the top of the shaft, where there were horizontal permanent beams. On the day of the accident, after the car fell or descended rapidly from the floor above to the landing floor, the lower weights were found pressing against the upper weights, which, in turn, were pressing against the horizontal beams, and thus had forced apart the vertical bars or guides so as to permit weights to fall out into the shaft, and upon the elevator car below, causing the death of plaintiff's intestate. It was testified that, although the momentum of the weights in their upward course might, when the car stopped, cause the weights to continue on less than a foot, it would not cause the lower weights to go upward at least five feet, pushing the upper weights upward against the horizontal beams. Hence it appears that the only other possible force must have been force applied through the rope attached to the lower weights, which rope passed down to the drum which was moved by electricity. It was testified that the drum, after the power had been shut off, might by momentum revolve, perhaps, half or a quarter of a revolution, if the brake was in proper condition, and this might raise the car a foot. The weights, however, were raised more than a foot, and to the extent at least of five feet, so that it appears that they were raised either because the power was not shut off, or because the brake was out of order. Three ways were provided for shutting off the power and applying the brake,—by the operator in the car, by the automatic stop or clutch device, and by the slack-cable device. The two latter were designed to stop the car, should it fall, or the cables become slack. It was testified that if the car came to the bottom, and the operator failed to shut off the power, and the automatic stop failed to work, then the slack-cable device would shut off the power and apply the brake; and it is evident that if the power was still on, the car being at the bottom, the rope above the car would become slack while the lower weights were being raised. Under such conditions, it was testified, the weights might rise about three feet six inches. Even this, however, does not account for the five feet covered by the lower weights; and therefore it follows either that the slack-cable device was out of order or wrongly adjusted, or else that the power was continued in spite of it. It is conceded that this elevator, which was of the Otis make, was a first-class machine, and it is not disputed that the various parts were properly and skillfully made. But in all the testimony sought to be elicited by the defendant and offered as to the different devices and safeguards, the matter of adjustment was lightly touched upon. It appears that the brake should be rightly adjusted in order to work in time, and that the automatic stop depended for its efficiency upon adjustment, and that the slack-cable device required adjustment, and was dependent upon the adjustment of the brake. In this connection it was brought out that

for some time previous to the accident the elevator had been heard to bump when it reached the first floor, and it was testified that on one occasion it had bumped so hard that an electric light bulb was shattered. It thus appears that for a considerable period of time prior to the accident in question the elevator had at intervals come to the bottom of the shaft with a bump similar to, but not as violent as, that which preceded the accident. It was testified that, unless the machine was out of order, it was not possible for it to bump; and again, "It is not possible for a car to bump hard if the machinery is properly adjusted." At the time of the accident the elevator bumped, and rebounded 18 inches. As to the automatic stop, it was testified: "It is supposed to operate of itself when the elevator gets to a certain point at the bottom of the shaft. If it is properly adjusted, it does." Here it did not operate, as evidenced by the fact that the power must have continued to lift the weights which were lifted; and a fair inference seems to be that the stop was not properly adjusted, and this independently of the bumping. And it was testified that, if there was a heavier weight than usual in the car, it would be apt to bump if the brake was out of adjustment. The car did bump, and hence it would seem to be demonstrated that the brake was out of adjustment, and had been for some time.

Although, therefore, the defendant showed that he had furnished a modern and scientifically constructed machine, the evidence would justify the inference that at the time of the accident it was not properly adjusted, and had not been for a considerable period prior thereto. To meet this evidence, the defendant showed that it was the duty of the Otis elevator people, who constructed the elevator, to adjust it when it was put in, and thereafter to inspect it, and that the Employers' Liability Corporation regularly inspected it, and had done so on November 25, 1898,—the accident occurring on December 5, 1898,—and their report was that the elevator was found to be in good condition. It was this evidence which no doubt had a controlling influence upon the learned trial judge, and it may be said to be the dividing line at which different minds considering the testimony will conclude in favor of or against the view that the defendant did not use reasonable care. But it is because different inferences can be drawn that we think the question of the defendant's negligence should have been submitted to the jury. Upon this subject, bearing in mind the rule "that the care must be commensurate with the danger," we think that, where an owner of an elevator has notice of its defective condition (and here not only had the bumping been heard all over the building, but the engineer who represented the defendant in the building testified that he knew of it), his duty is not discharged in providing by contract for the mere inspection of the elevator from time to time by a liability company, or the persons who constructed it, without calling the attention of the inspectors to the particular defects of which he had knowledge. The dropping of the car below the lower floor and into the bottom of the shaft, causing the bumping to which we have already referred, was sufficient to apprise those having charge of

the elevator that something was wrong with the machinery; and we think, in that connection, it was incumbent upon the defendant, in the discharge of his duty of exercising reasonable care to protect those whom he permitted to use the elevator, to have remedied the defects which he knew or should have known existed, or at least to have called it to the special attention of those who were experts in the elevator business. Although it was shown that the elevator was regularly inspected at stated times under some general arrangement, it does not appear that the defendant gave to the inspectors any notice of the bumping which was going on, or in any way sought to have it corrected.

Upon the proof, therefore, as it stood at the end of the case, we think that the course pursued by the learned trial judge in submitting the question of the defendant's negligence to the jury was right, and that, after the verdict in plaintiff's favor, his special ruling dismissing the complaint—because, as we take it, that is what was finally done—was erroneous, and that this error required a reversal of the judgment appealed from.

The judgment should be reversed, and judgment ordered for the plaintiff on the verdict.

HATCH, J., concurs.