act provision is made by which the Supreme Court shall, at the instance of the Attorney General, enforce such trust by proper proceedings. With much force it is contended that our courts have no power to appoint a trustee to execute or administer a trust in another state. I think, however, that under this provision of the statute the Supreme Court has power to provide by a proper judgment for the enforcement of this trust designating the proper beneficiaries. The court in this action has jurisdiction over the trustees. They are parties to the action, and upon a new trial the court could make such provision in its judgment as would carry out the intention of the testatrix. This judgment, being in an action in which the trustees are parties, could be enforced by the courts of any state in which the trust property should be located; the purpose of the judgment being to make certain the beneficiaries who are left uncertain by the provisions of the will. Such a judgment would give to those beneficiaries, or any one interested in the enforcement of the trust, the right to institute any action in any jurisdiction to enforce it. It is apparent that this would not be administering the trust in a foreign jurisdiction. The object of this provision of the statute is to enable the court to supply any deficiency as to the identity of the beneficiaries contained in the instrument creating the trust, and, that having been accomplished by a judgment best adopted to carry into effect the intention of the testatrix, the proper administration of the trust can be decreed by the courts of the jurisdiction in which the trusts should be located.

I think, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

LAUGHLIN, J., concurs.

(99 App. Div. 422)

GRANT v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. December 23, 1904.)

1. CARRIERS—INJURY TO PASSENGER—COLLISION OF HORSE WITH STREET CAR
—EVIDENCE OF NEGLIGENCE—SUFFICIENCY.

In an action against a street railway company for injuries to a passenger caused by a collision with a horse and wagon, the only evidence as to the cause of the accident showed that the horse ran into the rear of the car as it was coming to a stop, and stuck its head through the window behind plaintiff, breaking the glass. *Held,* that this did not show that defendant could have prevented the accident, so that the rule res ipsa loquitur did not apply to charge defendant with negligence.

Hatch, J., dissenting.

Appeal from Trial Term, New York County.

Action by Christina T. Grant against the Metropolitan Street Railway Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Maurice Rapp, for appellant.
Charles F. Brown, for respondent.

INGRAHAM, J.   The complaint alleges that the plaintiff, being a passenger upon one of the cars operated by the defendant, was injured owing to the carelessness and negligence of the defendant, its agents or servants, running into and colliding with a horse and wagon, thereby causing the plaintiff to sustain serious and painful injuries, for which she seeks to recover.   The plaintiff was examined as a witness, and testified that she got upon the car at Ninety-First street and Madison avenue; that she took a seat in the rear of the car, her mother and sister sitting immediately opposite her; that, as the car was proceeding down town, the plaintiff heard a commotion, and a horse's head came through the window behind her.   Upon cross-examination she testified that the only thing she knew was that she heard a commotion, and the horse's head came into the window behind her.   The plaintiff's mother testified that as they got to Twenty-Fourth street there was a sudden collision, and a horse's head came into the rear window of the car; that this horse was attached to a wagon, and came right through the window.   Upon cross-examination she testified that the car came to a stop on the south crosswalk of Twenty-Fourth street; that it came in collision before it came to a stop; that she did not see the horse prior to the collision; that the first thing she saw was the head of the horse, the first thing she got was the jerk of the car, and then she looked to see what was the cause of it, and saw the horse's head in the window—it had broken through the glass.   The plaintiff's sister testified that she was sitting on the east side of the car, and a jerk of the car made her look through the car, "and there I saw at the rear end of the car a horse's head in the window."   And this was the only testimony as to the accident.   The court dismissed the complaint, and the plaintiff appeals.

Although the witnesses speak of a collision of the car in which the plaintiff was riding, that collision is immediately connected with the appearance of the horse's head through the window of the car.   It is quite evident that the only collision was caused by the horse running into the rear of the car and sticking his head through the car window.   There is not a particle of evidence to justify a finding that this accident was occasioned by any obstruction upon the track, and the only conclusion from the evidence, that the jury was authorized to draw, was that a horse ran into the rear of the car, not that the car ran into the horse or wagon, and thus the horse collided with the car, not the car with the horse.   As the defendant had no control of the horse, it is not apparent how any care on the part of the defendant or its employés could have prevented the horse from running into the car.   The witnesses unite in stating that the car was coming to a stop, and stopped immediately after the horse's head came through the window.   No one appears to have been injured, except that the plaintiff was frightened by the horse's head coming through the window, and the fright caused the injury.

The plaintiff claims that the maxim res ipsa loquitur justified the jury in finding that the defendant was negligent. The application of this maxim has lately been much discussed in this state. In Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, Judge Cullen, discussing it, says:

"The application of the principle depends on the circumstances and character of the occurrence, and not on the relation between the parties, except indirectly so far as that relation defines the measure of duty imposed on the defendant."

The learned judge then quotes with approval from Shearman & Redfield on Negligence:

"It is not that in any case negligence can be assumed from the mere fact of an accident and an injury; but in those cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer."

The learned judge, continuing, says:

"I think a single illustration will show the correctness of the 'view of the learned authors, that it is not the injury, but the manner and circumstances of the injury, that justify the application of the maxim and the inference of negligence. If a passenger in a car is injured by striking the seat in front of him, that of itself authorizes no inference of negligence. If it be shown, however, that he was precipitated against the seat by reason of the train coming in collision with another train, or in consequence of the car being derailed, the presumption of negligence arises. The 'res,' therefore, includes the attending circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue—the defendant's negligence. The maxim is also in part based on the consideration that, where the management and control of the thing which has produced the injury is exclusively vested in the defendant. it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present. Neither of these rules— that a fact may be proved by circumstantial evidence as well as by direct, and that, where the defendant has knowledge of a fact, but slight evidence is requisite to shift on him the burden of explanation—is confined to any particular class of cases, but they are general rules of evidence applicable wherever issues of fact are to be determined either in civil or criminal actions."

The learned judge then quotes from Breen v. N. Y. C., etc., R. R. Co., 109 N. Y. 297, 16 N. E. 60, 4 Am. St. Rep. 450, as follows:

"There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of a defendant, and the accident is such as, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part;" and continues: "But the question in every case is the same, whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact in issue."

Thus, the mere fact of a collision between the car and a horse was not of itself sufficient to justify the application of the maxim. It is only such a collision as could be prevented by the control of the car by the defendant's agents that justifies the application of the maxim. If it affirmatively appears, as a part of the plaintiff's case, that the collision was caused, not by the car colliding against

ꞇn obstacle upon or in the neighborhood of the track, but by some other vehicle or animal running into the car, and it does not appear that those in charge of the car could have prevented it, then the circumstances surrounding the occurrence are not such as to justify the jury in inferring negligence. Griffen v. Manice having been reversed by the Court of Appeals, upon a new trial the complaint was dismissed. Upon appeal (74 App. Div. 371, 77 N. Y. Supp. 626) that judgment was affirmed upon the ground that, although the maxim res ipsa loquitur applied, upon the whole case the evidence did not justify a finding of negligence; and this decision was affirmed by the Court of Appeals. 174 N. Y. 505, 66 N. E. 1109.

In Alexander v. R. C. & B. R. Co., 128 N. Y. 13, 27 N. E. 950, the plaintiff was injured by a collision between a car in which the plaintiff was riding and a wagon loaded with lumber, caused by the driver of the wagon, when abreast of the car, suddenly turning his wagon; and it was held that there was no evidence to justify a finding of negligence of the defendant's employés. In the opinion the case of Hill v. Ninth Ave. R. R. Co., 109 N. Y. 239, 16 N. E. 61, was discussed. The court said of that case:

"An inference was justifiable on the plaintiff's proof that the car driver might have avoided the collision or lessened its effect, and therefore it was wrong to dismiss the complaint. The very nature of the accident in that case raised the inference that the driver must have been reckless, and that there might have been some way to avoid it by prudent driving; while here there was only reason to believe that the car driver could have done nothing to avoid the consequences of the teamster's conduct."

To justify the application of the rule res ipsa loquitur, there must be evidence from the surrounding circumstances which, in the absence of explanation, justifies the inference that the accident would not have occurred but for negligence of the defendant or its agents. Here the proof offered by the plaintiff does not show a situation from which an inference could be drawn that the defendant or its agents could have prevented this horse from putting his head through the car window. The court, therefore, would not have been justified in submitting the question of the defendant's negligence to the jury.

It follows that the judgment appealed from must be affirmed, with costs. All concur, except HATCH, J., who dissents.