ARTHUR MICHAELS, an Infant, by HARRY MICHAELS, His Guardian ad Litem, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

HARRY MICHAELS, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

First Department, January 30, 1931.

*Henry J. Shields* of counsel [*Edward A. Gobel* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel,* attorney], for the appellant.

*Harold R. Medina* of counsel [*Eugene A. Sherpick* and *William F. McNulty* with him on the brief; *Edwin M. Bohm,* attorney], for the respondents.

MARTIN, J. The accident out of which these actions arose occurred on the sidewalk, which it is admitted was maintained by the defendant, immediately adjoining the Two Hundred and Twelfth Coast Artillery Armory, on the southerly side of West Sixty-second street, between Columbus and Eighth avenues. Forming part of the sidewalk at this point are several sheet metal trapdoors, which open into a seven-foot shaftway leading into the cellar of the armory. These doors were held in place by steel frames cemented into the sidewalk.

On the day of the accident the infant plaintiff, a boy about six

years of age, was playing "tag" with his brother and another small boy. He testified: "I was running and Teddy was just going to tag me and I ducked and jumped and he went down with me on the grating — we both fell down."

It appears that the trapdoor and the steel frame holding the trapdoor in place gave way and the door together with the two boys dropped down into the seven-foot shaftway.

It is alleged that this trapdoor had been in defective condition for a long time prior to the accident and that the defendant had notice and knowledge of the defective condition.

The complaint alleges:

"*Sixth.* That on the 18th day of July, 1926, while the infant plaintiff was lawfully upon said sidewalk, and passing over said trapdoor in the grating level with the sidewalk, said grating and/or the supports holding the same in place collapsed, violently hurling him into the sub-cellar or basement under said grating. That said fall was due to the fact that the trapdoor and its supports, kept and maintained by the defendant, were allowed to become and remain in a state of disrepair and dangerous to the infant plaintiff when he stepped upon said cover.

"*Seventh.* On information and belief, that said trapdoor had been for a long time prior to said day in a defective condition and that defendant had notice and knowledge of its defective condition."

In this form of action the plaintiff was bound to sustain the allegation of notice, either actual or constructive. No proof whatever was submitted by the plaintiff to charge the city with either actual or constructive notice. The city proved by witnesses that an inspection of this door had been made a short time before the accident occurred and the door was found to be in good condition.

The manner in which the accident occurred is fully stated in an exhibit offered in evidence by plaintiff, marked "Plaintiff's Exhibit 1," which reads in part as follows: "You are hereby advised that on Sunday, July 18, 1926, about 4.30 P. M., a number of children were climbing on the iron bars covering the windows on the first floor of the administration building of the Armory 62nd Street side, and were jumping from same to a sheet iron trapdoor on street level over area directly west of main entrance. One of the hinges on trapdoor became loose and the frame shifted falling to the cellar with two children * * *."

This appears to be a concise statement of the accident for which the trial court held the city of New York liable.

In *Lessin* v. *Board of Education* (247 N. Y. 503) the construction was somewhat similar to the construction in this instance, with the exception that in that case the vault was inside the lot line although

it was a part of the sidewalk. The court said: " In the present case there is nothing in the evidence which suggests that the original construction of the elevator and elevator shaft was not reasonably safe. Liability, if any, must be predicated upon proof that the defendants have been guilty of negligence in the maintenance of the opening."

James F. Dowling, emp´oyed as chief engineer at the armory, testified that the door was in good working condition; that the door opened and closed; that it had been opened approximately once a week; that there was nothing wrong with the door or framework; that there was no defect that he could see; that he thoroughly examined the door Saturday at noon when he left, which was the seventeenth day of the month and the accident happened on the eighteenth. His testimony in respect to the condition of the door is in part as follows: " By the Court: Q. Did you ever examine these hinges by touching the hinges? A. Yes, sir, we put oil on them. Q. Did you ever examine these hinges by actually touching them? A. Yes, sir. Q. When? A. I could not tell exactly, how long before the accident, it might have been a month, two months. Q. How did you do that? A. By brushing hinges off."

The city of New York is in the same position as any other owner of premises adjoining a public highway. The rule of liability in such a case was laid down in *Gelof* v. *Morgenroth* (130 App. Div. 17) where the court said: " It is clear that as the landlord had no notice of the unsafe condition of the grating and had no opportunity to repair it, he was not negligent in the performance of the duty that was imposed upon him to keep the grating in a proper condition."

In *Matthews* v. *City of New York* (78 App. Div. 422, 425) this court said: " It does not necessarily follow, however, that the city was guilty of negligence. There was no evidence of actual notice to the city of the dangerous condition of the coal hole. Its liability depends upon whether it had constructive notice. The city was only chargeable with such knowledge of the method of construction of this coal hole, cover and attachments as would be acquired by properly inspecting the same from the street. (*Smith* v. *Mayor*, 15 Wkly. Dig. 103; *Hanscom* v. *City of Boston*, 141 Mass. 242.) It was under no obligation as matter of law to inspect the under side of the cover or attachments for fastening it below."

In *D'Orsi* v. *City of New York* (104 Misc. 66) the court said: " There is no evidence that the officers of the city having charge of the city streets had actual or constructive notice of any defect in the coal hole or its cover. The judgment can, therefore, not be

sustained on the ground that the city neglected its general obligation to keep its streets reasonably safe for pedestrians."

In *Metzroth* v. *City of New York* (241 N. Y. 470, 475) the Court of Appeals said: " * * * the city would not be liable until it had notice, either actual or constructive, of the danger arising from such improper use." (See, also, *Trustees of Canandaigua* v. *Foster,* 156 N. Y. 354; *Donnelly* v. *City of Rochester,* 166 id. 315; *Tubesing* v. *City of Buffalo,* 51 App. Div. 14; *Ross* v. *City of New York,* 191 N. Y. Supp. 744.)

The city of New York in this case not only proved that it had neither actual nor constructive notice, but established the additional fact that after a thorough inspection of this door no defect was observable. It does not appear, therefore, that there was anything the city could have done which it did not do to properly maintain the property in question and to avoid the charge of negligence.

If we assume for the purposes of this case that the doctrine of *res ipsa loquitur* applies, the inference of negligence growing out of that doctrine was fully met by the uncontradicted testimony of the defendant's witnesses. (*Griffen* v. *Manice,* 74 App. Div. 371; affd., 174 N. Y. 505.)

This accident appears to have happened by reason of the fact that, while these boys were playing "tag," they jumped on this door; that the hinges gave way and the door fell, with the boys, into the cellar. It was shown that the door had never fallen before and that it was strong enough to support a heavy person. It also appears that although the hinges did break at the time of this accident, they had not been broken before these boys jumped on the door.

The facts proved lead to the conclusion that defendant was not negligent and is not liable as owner or in its capacity as a municipal corporation.

The judgments should be reversed and new trials ordered, with costs to the appellant to abide the event.

DOWLING, P. J., FINCH, McAVOY and O'MALLEY, JJ., concur.

In each action: Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.